No. 25,438.

R. H. WEBB, *Appellee,* v. STEPHEN R. BOULANGER, FRANK WALTERS, and BILLIE ROE,. *Appellants.*

SYLLABUS BY THE COURT.

1. CONSPIRACY—*To Injure Reputation and Character of Another—Unlawful Arrest and Imprisonment.*  When several parties conspired together to place a woman in a compromising position with a man afterwards to be selected, and afterwards, in furtherance of the conspiracy, lured the woman to the room of the plaintiff and took or caused to be taken into the room intoxicating liquor without the consent of the plaintiff so as to make it appear that plaintiff was engaged in unlawful conduct, and then called the police and caused the arrest and imprisonment of the plaintiff to his defamation and injury, the defendants are liable for the damages suffered by the plaintiff although he had not been selected when the plan was originally conceived, but was subsequently included in the plan and in the accomplishment of their wrongful purpose.

2. SAME—*Admissions of Coconspirator Competent Evidence.*  Admissions of one of the defendants tending to show the conspiracy and accomplishment of the wrongful purpose of the defendants are admissible in evidence, although a *prima facie* case to fully establish the conspiracy had not yet been made.

3. SAME—*Order of Proof Within Judicial Discretion.*  In such a case the order of proof is largely within the discretion of the trial court, and the admission of the evidence at the time it was received cannot be regarded as prejudicial error where the accomplishment of the wrongful purpose of defendants was in the end well established.

4. SAME—*No Material Error in Instructions.*  Instructions given to the jury relating to the conspiracy examined and held to be without material error.

5. SAME—*Refusal to Submit Requested Interrogatories.*  There is no error in the refusal to submit a special interrogatory where it embraces several distinct questions and calls for a recitation of considerable of the evidence.

6. SAME.  A reasonable rule requiring timely presentation of special questions may be enforced, and ordinarily the court may refuse to submit special

questions not presented until after the jury has been instructed and counsel are about to begin argument.

7. SAME—*Evidence—Verdict—Judgment.* The evidence examined and held to be sufficient to sustain the verdict and judgment.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed October 11, 1924. Affirmed.

*J. E. Brooks, R. O. Robbins,* both of Sedan, and *Thurman Hill,* of Independence, for the appellants.

*Sullivan Lomax,* of Cherryvale, and *T. E. Wagstaff,* of Independence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by R. H. Webb, a minister of the Gospel, against the defendants charging them with unlawfully conspiring to injure him in his profession and character, and causing his unlawful arrest and imprisonment.

Among other things it was alleged in substance that defendants conspired to defame him by making it to appear that he was in a clandestine position with Lillian H. Boulanger, who with others entered the room occupied by him at his hotel, and brought with them corn whisky and cigarettes, without his knowledge or consent, in order that it might appear that he was engaged in licentious and unlawful conduct. When the plot was completely arranged and the stage set, defendants indicated to an officer that the plaintiff was engaged in immoral and unlawful conduct, and was in the possession of intoxicating liquors, and called the chief of police. The officer responded to the call, and when he saw the situation and intoxicating liquors in the room he in good faith arrested the plaintiff, believing he was violating the law, and committed him to prison, where he was compelled to spend the night in unsanitary and vile conditions. He further alleged that in order to be released from custody he was required to give a bond and also to employ an attorney and make a defense in the police court, where after a full hearing he was found not guilty and was discharged.

He alleged that the plot was conceived and carried out with the purpose of defaming and injuring him and to lead the officers and people to think that he had committed a crime punishable by imprisonment, and further that they circulated the false statements that he was guilty of offenses involving moral turpitude which injured his good name and his standing in his profession, for which

he asked damages. One of the purposes of the plot, it was alleged, was to obtain damaging evidence against Mrs. Boulanger, who had sued the defendant, Boulanger, her husband, for a divorce, and was seeking a large amount of alimony; and the concerted plan was to make it appear that she was guilty of lewd conduct with plaintiff and was not entitled to a divorce in the case which was then pending. In the present case the defendants filed a joint answer denying all of the allegations of the petition, except the pendency of the divorce action. The trial resulted in a verdict in favor of the plaintiff, awarding him damages in the sum of $1,500.

Motions to strike certain allegations from the petition and to make the allegations more definite and certain were made and over-ruled. It is contended that there was error in these rulings, but there appears to be no merit in the exceptions. The sufficiency of the petition was also challenged but it is plain that sufficient facts were alleged and that the overruling of the demurrer was not error.

Error is assigned on the admission in evidence of statements made by Billie Roe, who is one of the defendants, while she was testifying in the police court during the trial of the charge that plaintiff and Billie Roe and others had violated the law. She had been employed by defendant Boulanger to entrap and discredit his wife, and had testified there and had admitted facts tending to show the unlawful conspiracy; and evidence of her statements there made were related by a witness who had heard them. Her statements were to the effect that a plan had been made by the defendants to entrap Mrs. Boulanger, that Mr. Boulanger had employed her and her codefend-ant Walters, to put Mrs. Boulanger in a compromising position, that a man was necessary to effect their purpose, and the plaintiff was selected as the victim of the unlawful plot, which was inten-tionally accomplished with the purpose of defaming Mrs. Boulanger and the plaintiff. It is said that evidence given on a former trial cannot be introduced unless it appears that the witness was un-available, and that this was not shown. The admissions and state-ments related were made by one of the defendants, and were ad-mitted not as evidence of what occurred in another trial but as admissions of the wrongs charged, and which were admissible re-gardless of whether made in court or out of court and whether stated under oath or not. It was direct and competent evidence against the defendant who made the statements and admissions. It has been held that:

"In an action against several defendants, charged as engaged in a conspiracy to wrong the plaintiff, the admissions and statements of each defendant are competent evidence against him whether a conspiracy be proved or not." (*Morrow, et al., v. Comm'rs of Saline Co.*, 21 Kan. 484, syl. ¶ 7.)

Where several defendants are jointly charged with a conspiracy to injure another, and where it is shown that the defendants acted in concert in accomplishing the wrongful purpose, the admissions are competent against the codefendants. (22 C. J. 352.) The acts and declarations of one conspirator may be shown to prove the conspiracy, and it being established the acts and declarations of one are competent against all who are parties to it, and the acts of one done in pursuance of the conspiracy are to be considered as the acts of all and for which all are liable. No error was committed in the admission of the evidence.

It is also contended that a *prima facie* case of conspiracy had not been made when the statements and admissions of Billie Roe were received in evidence, and that her statements were not admissible until the existence of a conspiracy had been shown. Her admissions were pertinent to prove that the conspiracy had been formed, and besides, the order of proof is not of much importance in a civil case where, as here, the conspiracy to accomplish a wrongful purpose was in the end well established. The order of proof is largely within the discretion of the trial court. (*Spies et al. v. People*, 122 Ill. 1; *Jenne v. Joslyn*, 41 Vt. 478.)

There is a further complaint of the exclusion of testimony to the effect that the plaintiff at some time prior to the incident in question had stated that he was a married man only when he was at home, and some other similar testimony, which had no connection with the issues in the case and was properly excluded.

Error is assigned, too, on the refusal of requested instructions, but this assignment is not argued and manifestly is not relied on by the defendants.

It is further contended that there was error in the instruction given wherein the jury were told that:

"You are further instructed that when two or more persons act together in the furtherance of a conspiracy, what either does in carrying out such conspiracy is, in law, the act of each of said persons. You are further instructed that where two or more persons enter into a conspiracy to do an unlawful act or to do a lawful act in an unlawful manner, they are each personally liable for any damages occasioned by reason of the conspiracy, whether the person injured was originally intended to be included in the conspiracy or not."

Webb v. Boulanger *et al.*

We find no fault in the instruction.  It was shown that the defendants conspired together to accomplish the wrongful purpose and that purpose not only included the wrong of entrapping the wife of Boulanger, but also that of defaming and injuring the plaintiff. The fact that the plaintiff was not included as one of the victims of the conspiracy at the time it was first formed, and that no particular man had been decided on to be placed in a compromising position with Mrs. Boulanger, does not relieve them from liability.  They intended to perpetrate a wrong on the man selected as a victim and when plaintiff was selected and wronged as they had conspired to do, they became liable to plaintiff for the injury to the same extent as if he had been selected when the conspiracy was first formed.

There is a complaint, too, ·of an instruction to the effect that if the. conspiracy was entered into to defame and injure the plaintiff by taking a woman, corn whisky and cigarettes into his room without his knowledge or consent, and where, in furtherance of the conspiracy, the trick was arranged to involve the plaintiff, whether or not he was in fact the man intended in the first instance, the jury might find for plaintiff if they afterwards intentionally caused the policeman to be called and caused him to be charged with a crime and tried in the police court on the apparent situation that he had committed a crime, but if they did not so believe, the verdict should be for the defendants.  The complaint as to this instruction is mainly that if the plaintiff had consented to the parties coming into his room, there being some testimony to that effect, there could have been no liability of the defendants.  The instruction, however, makes the entry of the room without the knowledge or consent of the plaintiff a necessary element of a finding in favor of the· plaintiff and unless the jury found this from the evidence they were told that the verdict should be for the defendants.  The instruction read in connection with other portions of the charge was not misleading or erroneous.

Another assignment of error is the refusal of the court to submit certain requested special interrogatories.  A list of twenty-one questions was presented to the court for submission to the jury, a number of which embraced several questions and called for a recital of evidence rather than of ultimate facts.  These questions were refused but at the same time the court stated that if defendants would prepare and present twelve proper questions they would be submitted.  Later defendants presented thirteen questions and asked

for their submission. This list was properly refused. Instead of each question calling for a single ultimate fact, most of them embraced two or three questions and called for a recitation of a large part of the evidence on which the general answers were based. For instance the first question was:

"Q. Do you find that the defendant, Boulanger, employed either of the other defendants to act for him? If so, please state the purpose for which each defendant was employed."

The second question was:

"Under the terms of her employment was Billie Roe authorized by either the defendant, Boulanger or Walters to arrange any parties, furnish any intoxicating liquor, or do any other unlawful act? If so, please state what unlawful act she was authorized to do and who so authorized her."

It has been determined that each special interrogatory should distinctly present a single material fact involved in the issues of the case. (*Railroad Co. v. Aderhold,* 58 Kan. 293, 49 Pac. 83.) It has also been decided that questions should not be submitted which require the jury to state the evidence in detail explanatory of the general questions. (*Foster v. Turner,* 31 Kan. 58, 1 Pac. 145; *Mo. Pac. Rly. Co. v. Reynolds,* 31 Kan. 132, 1 Pac. 150; *Jenkins v. Beachy,* 71 Kan. 857, 80 Pac. 947). Most of the questions as to material matters were subject to the same objections. After these questions were refused defendants attempted to reframe and trim them down, and as reframed several of them were still subject to objection. The final draft of questions was not presented until after the instructions had been given and the court for that reason refused them. It cannot be held that there was error in the failure to submit questions at that time. In an earlier case appealed from the same court, where there is a rule requiring parties desiring the submission of special questions to present them to the court as soon as the testimony is concluded, and there certain questions were not presented in accordance with the rule, questions were submitted after the instructions had been given and counsel were about to begin argument, and the court held that the request had not been made in good time and refused to submit them. On appeal it was decided that the rule was not unreasonable and the ruling not an abuse of discretion. (*Lehnen v. Hines & Co.,* 88 Kan. 58, 127 Pac. 612.) Under the circumstances of the present case the refusal of the court to submit special interrogatories as presented was not prejudicial error.

An attack is made on the sufficiency of the evidence to sustain the verdict, but an examination of it leads to the conclusion that it is abundantly sufficient.

Judgment affirmed.