No. 26,419.

Mrs. D. C. Prewett, *Appellant,* v. S. M. Sholl et al., *Appellees.*

SYLLABUS BY THE COURT.

1. Conspiracy—*Civil Liability—Evidence—Sufficiency on Demurrer.* The evidence relating to the existence of a conspiracy by the defendants to wrong the plaintiff, is examined and held to be sufficient to overcome a demurrer thereto of an appealing defendant.

2. Trial—*Taking Case from Jury—Demurrer to Evidence.* Rule followed that though the testimony may be meager and weak it does not justify the taking of the case from the jury if that which is produced fairly tends to prove the facts essential to a recovery.

Appeal from Sedgwick district court, division No. 2; Thornton W. Sargent, judge. Opinion filed January 9, 1926. Reversed.

*J. Graham Campbell* and *Ray Campbell,* both of Wichita, for the appellant.

*Lew E. Clogston,* of Wichita, for the appellees.

Conspiracy, 12 C. J. p. 639 n. 90. Trial, 38 Cyc. pp. 1533 n. 25, 1543 n. 67; 26 R. C. L. 1067.

The opinion of the court was delivered by

JOHNSTON, C. J.: Mrs. D. C. Prewett brought this action against S. M. Sholl and John H. Gore to recover damages alleged to have been sustained by fraudulent representations, and a conspiracy by the defendants to defraud the plaintiff in order to secure a title to certain real estate for a nominal sum. When she had concluded her testimony the court sustained a demurrer to the evidence as to Sholl and overruled it as to Gore. The case then proceeded against Gore with the result that a judgment was given against him and in favor of the plaintiff for $2,097.60, from which Gore did not appeal. The plaintiff appeals and complains of the ruling sustaining the demurrer of defendant Sholl.

It appears that she was the owner of hotel property in Moran, Kan., which she listed with Gore for sale or exchange. In May, 1923, Gore reported to her that defendant Sholl would give her 170 shares of Union Oil Company stock worth $1,500, and fifty shares of Marigold Oil Company stock worth $800, and the additional sum of $100 in cash for the hotel, and would assume certain liens thereon. The exchange was made and deed executed by plaintiff to Sholl for the property. She alleged that defendants represented to her that the oil stock was worth $7,700, when in fact it was of no value, and that all she received for her hotel, worth $2,500, was the $100 cash payment made by Sholl. She alleged that she was physically weak, without business experience, that she believed that Sholl and Gore were men of good character, and financial ability, and relied on their representations as to the value of the oil stock, and that they induced her to take the stock well knowing it to be worthless. She alleged that they conspired and connived together and made the false and fraudulent representations of the value of the stock for the purpose of defrauding her, and that each was actuated by and carried out a common purpose to cheat her by procuring her hotel property for the nominal sum of $100.

Sholl admitted the ownership of the oil stock and the transfer of the same to her, together with $100 for the property conveyed to him by the plaintiff, but he alleged that Gore was the agent of the plaintiff and not of himself, that he never saw the plaintiff until after the transaction had ended, and he had no knowledge of or about her. He further alleged that he made no representa-

tions to her as to the value of the oil stock, and did not know that she was dissatisfied with the exchange until shortly before the filing of this action. In respect to the agency and action of Gore, there was evidence that he told Mrs. Prewett that Sholl had represented the stock to be worth $2,300, and she could sell it for that sum, and she could count on what he said, that he, Gore, was representing Sholl in the transaction, and that if the transfer were made she would not owe him a cent of commission because he was representing Sholl in the transaction. Gore never asked plaintiff for any commission and was paid none by her. There was testimony that while she did not meet Sholl before the agreement to the transfer was made, she went with Gore to Sholl's office where she executed a deed prepared by Sholl's stenographer conveying the property to him. The testimony tended to show that the Union Oil Company had been in the hands of a federal receiver for over two years, and that the Marigold Company was also insolvent and a receiver therefor was appointed in June of that year, and that both kinds of stock were absolutely worthless. She testified that when she learned of the situation she visited Sholl and told him that the companies were bankrupt, and that he stated that the stock was worth every dollar they had represented it to be, and that many companies had busted and been reorganized and became twice as strong as before.

The controlling question in the case is whether there was sufficient evidence as to fraudulent representations, made by Sholl, and of a conspiracy with Gore to defraud plaintiff to take that question to the jury. The statements of Gore that he was the agent of Sholl and was representing him in the transaction are of course not binding on Sholl. It is well settled that an agency cannot be shown by the acts or declarations of one assuming to act in that capacity. Plaintiff had listed her property with Gore and at the outset he was the acknowledged agent of plaintiff. However, if it was shown that he was unfaithful to her and conspired with Sholl to work off the worthless oil stock upon the plaintiff as a consideration for the hotel, Sholl cannot escape liability. His connection with the wrong may be established by direct evidence or by circumstances or by subsequent admissions of his. Gore's part in the alleged fraud was proven and adjudicated. He assured plaintiff that he was not acting for her and would look to Sholl for his commission in the transaction. It appears that Sholl accepted the benefits of the transaction and

it was his oil stock that was given in exchange for the hotel. It may be assumed that he knew that the stock was without value and that the actual consideration paid for the hotel was only $100. He made a transfer of the stock and delivered it and the $100 in cash before the deed was executed by plaintiff. Shortly after the deed was executed when plaintiff visited Sholl and told him that she had found the stock to be worthless, he said "It was worth every dollar *they* had represented it to be." Gore had told her of Sholl's representations, and then added his assurance that big dividends were being paid on the stock, and that the shares in both companies were worth more than $2,300. When she chided Sholl about the character of the stock he said it was worth what *they* had represented it to be. There was testimony as to what he had represented to Gore, and of what Gore had represented to plaintiff. It is not an unreasonable interpretation of the statement that the *"they"* referred to by him, were Gore and himself. · Further along in the conversation with Sholl she told him she could not get anything for it. He replied, "He knew it was worth every dollar *they* said it was." This statement of his was in the nature of an admission that both Sholl and Gore had made representations to her as to the value of the stock. His retention of the property after learning of the misrepresentations and after being informed that Gore had represented himself to be Sholl's agent and had repeated Sholl's representations as to value, tended to show that both were acting together in the representations and in the scheme to obtain plaintiff's property for a trifle of its value. The admissions and statements of one of several defendants alleged to have been engaged in the conspiracy in order to wrong the plaintiff are competent evidence against him towards establishing a conspiracy. (*Morrow et al. v. Comm'rs of Saline Co.,* 21 Kan. 484. See, also, *Webb v. Boulanger et al.,* 116 Kan. 711, 229 Pac. 754; *Yates v. Sugar & Land Co. et al.,* 117 Kan. 405, 231 Pac. 1034.)

Again, if it be granted that Gore was the agent of plaintiff and not of Sholl and that a conspiracy existed between Sholl and her agent Gore, to defraud plaintiff with false representations made by Sholl, and repeated to her by Gore, upon which she relied, Sholl would be liable for the wrong done. If Gore was used by Sholl as a "cat's paw" to accomplish the fraud his liability would be no less than if Gore had been his duly appointed agent. While the testi-

11—120 Kan.

mony connecting Sholl with the alleged fraud of which Gore had been adjudged guilty, is somewhat meager, we are of opinion that enough was shown to require the submission of the case to the jury. The fact that the testimony may be meager or weak does not justify the taking of a case from a jury if that which is produced tends to prove the essential facts necessary to a recovery. In passing upon the demurrer the court was required to view the evidence given in the light most favorable to plaintiff and allow all reasonable inferences in her favor. (*Rowan v. Rosenthal,* 113 Kan. 604, 215 Pac. 1008.)

Under these rules for measuring plaintiff's testimony we conclude that the demurrer was improperly sustained.

The judgment is reversed and the cause remanded for another trial as to the liability of Sholl.