Walker v. Eckhardt.

No. 27,064.

E. C. WALKER, *Appellant*, v. LEVI ECKHARDT, *Appellee*.

SYLLABUS BY THE COURT.

1. ANIMALS—*Breach of Pasturage Contract—Damages—Evidence.* In an action to recover damages for refusal to carry out a pasturage contract, the evidence considered and held sufficient to require submission to a jury.

2. TRIAL—*Demurrer to Evidence—When Properly Sustained.* A demurrer to the evidence of plaintiff should not be sustained unless the court is able to say that, admitting every fact that is proven which is favorable to the plaintiff, and admitting every fact that the jury might fairly and logically infer from the evidence favorable to the plaintiff, still the plaintiff has failed to make out some one or more of the material facts of his case. (Following *Rowan v. Rosenthal,* 113 Kan. 604, 215 Pac. 1008, and *Prewett v. Sholl,* 120 Kan. 158, 242 Pac. 149.)

3. AGENCY—*Creation and Existence of Relation—Implied Agency.* To establish the relation of agency an express appointment and an acceptance thereof is not essential, but it may be implied from other facts, such as the statements of the parties, their conduct and the relevant circumstances. (Following *Wilson v. Haun,* 97 Kan. 445, 155 Pac. 798.)

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed January 8, 1927. Reversed.

*W. L. Cunningham* and *D. Arthur Walker,* both of Arkansas City, for the appellant.

*S. C. Bloss* and *J. A. McDermott,* both of Winfield, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover damages for breach of a pasturage contract. The plaintiff, who lived in Pawhuska, Okla., was extensively engaged in the cattle business. The defendant, who lived in Viroqua, Wis., owned what was known as the Ohio ranch, sixteen miles east of Arkansas City, in Cowley county. H. H. Rice represented the plaintiff in certain negotiations for the rental of the Ohio ranch for the summer season of 1923. His father, H. J. Rice, had for some years previous had charge of the Ohio ranch for the defendant. The questions were whether H. J. Rice had authority as agent for the defendant to rent the ranch and whether a contract was actually entered into. A demurrer to plaintiff's evidence was sustained, and he appeals.

Agency, 2 C. J. p. 436 n. 79; 1 R. C. L. 819.    Animals, 3 C. J. p. 40 n. 90. Trial, 38 Cyc. p. 1543 n. 69; 26 R. C. L. 1061.

Was there sufficient evidence to require submission of the case to a jury?

H. H. Rice, among other things, testified in substance:

"Am living in Grainola, Okla., engaged in grazing cattle, have pasture for rent down there. Know the Ohio ranch, have known Eckhardt for 12 to 15 years. Have known Walker about 8 years. Along in Feburary, 1923, about the time of the cattlemen's convention at El Paso, I had a letter in my possession written by Mr. Eckhardt to my father with reference to renting of the Ohio ranch. Met Mr. Walker on that trip. Had a conversation with him. After I returned talked to my father about it at Arkansas City. This conversation was about three weeks before April 10. Told my father Walker would give $6 for this grass. He said Mr. Eckhardt had asked $7 for it; that he would wire him or write him and see what he had to say about it. I came back a few days after that. He had heard from him (Eckhardt). He showed me a letter from Eckhardt of March 31, which says: 'However, I would like to have the refusal of $6 up until April 10, if necessary.' I read this letter over, told my father that I would wait until the 10th if he would draw a contract if he hadn't heard from Mr. Eckhardt about that time. He said he would. I came up on Monday and saw my father at his home. I stayed all night the 9th and 10th. My father told me to go and draw a contract and he would let me have the pasture for $6 for the grazing season. I had this contract drawn, signed the name of E. C. Walker. About this time, I sent a telegram to Mr. Walker. My father, at the same time, sent a telegram to Mr. Eckhardt the same day. We were both in the office together."

On cross-examination, among other things, he testified:

"My father showed me a letter showing where he was instructed to rent this grass. I had a conversation with my father about renting the pasture prior to the time I went to the cattlemen's convention at El Paso. He wanted me to rent it for him. I was to get $7 per head if I could. I couldn't get $7 per head. . . . My father just told me that Eckhardt said, 'Go ahead and draw a contract about the 10th.' . . . It wasn't my intention for Mr. Eckhardt to sign the contract. I took this contract home, my father's home, just gave it to him and asked him how it was. He said it was all right. Said he would sign it and send it to Mr. Eckhardt. . . . I was acting for Mr. Walker. My father didn't sign it. He said he would sign it and send it to Mr. Eckhardt. Yes, I say here to the court and jury that my father said he would sign it. We both went and wired. I left the contract with him, expecting him to sign. I didn't think it was necessary for me to have my contract signed up and take a copy. . . . We both wired on this contract that the deal was made. . . . I don't know whether both contracts were sent to Mr. Eckhardt or not. I know we agreed on the terms. . . . He read the contract over after I showed it to him. He said 'the contract is all right.' "

James E. Warren, among other things, testified in substance:

"Live in Cowley county. Know Eckhardt and the Ohio ranch. Sent a telegram to Eckhardt in April, 1923. Did not get a reply to that telegram.

Next evening, after 8 o'clock, called Eckhardt at Viroqua by telephone. Told him I had a chance to get 850 cattle; could use the grass at that place. All the grass on the Ohio ranch and the Kolar ranch for that many cattle. · He told me he thought that Rice had sold it, but didn't know for sure, but would let me know the next day. He didn't let me know the next day. Two or three days after I talked with him, I got a card from Mr. Rice saying Mr. Eckhardt asked him to advise me that the grass was sold to Walker."

On January 13, 1923, Eckhardt wrote H. J. Rice, among other things, as follows:

"Am pleased to know that you have the cattle promised and hope the price of grass is good, but will be willing to accept the highest going price (think $7 not too much). . . . Would want to hold these you have promised I think in preference to buying if price of pasturage is fair, but should I decide to buy they would not be hard to place. Wish you would write me who owns these steers and who they are coming through, as we do not want to lose them, and would correspond with them direct. . . . If these cattle are absolutely certain and the owner wishes this grass and no other, there is only one of two things to do, which is to accept or reject. . . . If you can get a letter from the party, do so and send it to me and send name and address, that I may get in touch with him. You may be sure I will not spoil anything for you."

On February 16 he wrote:

"I have your letter in regard to the pasturage, and will say I am willing to depend upon you for the cattle if I was sure you can furnish them and at a price that we should have as compared to other pastures with one commission."

On March 20 he wrote:

"Sorry you did not get to go down, but presume it would have made no difference. Possibly you can find them yet if you could see Walker yourself. . . . See what you can do as to cattle and wire me if you can furnish them."

On March 31 he wired:

"Have other good prospects at $1.50 per head more money; nothing sure; my old offer holds good to you any time before I close. Wire me latest date your offer will stand and if I feel justified may accept offer to cover one thousand head of steers."

The same date he wrote:

"Will consider for a few days, and ask you if you cannot raise it to hold onto it as' long as possible, then before passing·it up give me another chance by wire. . . . However, would like to have the refusal of the $6 up until April 10th if necessary and he can wait that long."

On April 6 he wrote:

"We ought to have $7, but possibly better take the Walker cattle at the

best price we can get as it is getting time. If he will advance some money so we can take up the mortgage, just have it assigned to me instead of paying it off. Then it will stand ahead of anything else. Also have them assign the note same as though I was buying it from them, which in fact is the case. . . . I hope you can arrange for the mortgage. Will send receipt to Walker for what money we get. . . . Will forward contract if necessary; otherwise draw it for October 10 to 15 with $1 per month per head after October 15. Will have pastures burned. Am writing Mr. Wicker to-day. Wire if he does not take grass."

On April 7 Rice wired Eckhardt:

"Wilkers wants to know at once about grass, as it is getting late."

On April 9 Eckhardt wired Rice:

"Wire received yesterday; letter of 6th has doubtless reached you by now. The F. Jacksons of Miami, Tex., want grass for 600 steers if Walker deal is not closed. Wire Jackson $7 for season. Do not lose Walker, but get the high dollar."

On April 10 H. H. Rice wired Walker:

"Drew contract to-day on thousand steers at six; let me know about Miller grass later in care of St. Angelo hotel; answer soon."

On April 12 Eckhart wired H. J. Rice:

"Can you close Walker? If not see Warren to-day; wire."

Rice replied by wire the same date:

"Closed with Walker; will send contract to-day. Did not get any money down."

On April 16 Eckhardt wired Rice:

"Have you sent contracts? Am offered $8. Can I accept it? Wire."

Other evidence need not be detailed. On April 18 Eckhardt wrote the plaintiff Walker he was returning contract and thought it best to cancel the same, and on the nineteenth he wired Mrs. Rice that the contract by Rice was refused. Other communications were had between the plaintiff and defendant, from which it appears that after transmission of the contract to defendant by H. J. Rice the defendant received an offer of a higher price for the renting of his ranch and therefore canceled the deal with Walker.

"An agency has been defined as a contract, either express or implied by which one of the parties confides to the other the management of some business to be transacted in his name, or on his account, by which that other assumes to do the business and to render an account of it." (21 R. C. L. 817.)

In *Wilson v. Haun*, 97 Kan. 445, 155 Pac. 798, it was said:

Walker v. Eckhardt.

"To establish the relation of agency an express appointment and acceptance thereof is not essential, but it may be implied from other facts, such as the statements of the parties, their conduct and the relevant circumstances."

In *Hucabee v. Pullman Company*, 8 F. (2d) 43, it was said:

"It is not essential that any actual contract should subsist between the parties or that compensation should be expected by the agent. . . . If relations exist which will constitute an agency, it will be an agency, whether the parties understood it to be or not. Their private intentions will not affect it."

The rule is thus stated in 21 R. C. L. 819:

"Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under agreements or acts. If relations exist which will constitute an agency, it will be an agency, whether the parties understood it to be or not. Their private intention will not affect it. It is not essential that any actual contract should subsist between the parties or that compensation should be expected by the agent; and while the relation in its full sense, invariably arises out of a contract between the parties, yet the contract may be either express or implied." (See, also, *Banks Brothers v. Everest and Waggener*, 35 Kan. 687, 12 Pac. 141; *Raynor v. Bryant*, 43 Kan. 492, 23 Pac. 601; *Hansford v. Meserve*, 97 Kan. 450, 53 Pac. 835; *Linscott v. Conner*, 85 Kan. 865, 118 Pac. 693; 2 C. J. 435; *Mitchell v. Derby Oil Co.*, 117 Kan. 520, 232 Pac. 224.)

"A demurrer to the evidence of plaintiff should not be sustained unless the court is able to say that, admitting every fact that is proven which is favorable to the plaintiff, and admitting every fact that the jury might fairly and logically infer from the evidence favorable to the plaintiff, still the plaintiff has failed to make out some one or more of the material facts of his case." (*Rowan v. Rosenthal*, 113 Kan. 604, 215 Pac. 1008. See, also, *Prewett v. Sholl*, 120 Kan. 158, 242 Pac. 149.)

We are of opinion that the evidence, when given every fair inference to which it was entitled, was sufficient to require submission of the case to the jury.

The judgment is reversed, and the cause remanded for a new trial.