No. 34,039

CITIES SERVICE OIL COMPANY and CITIES SERVICE GAS COMPANY, *Appellants*, v. SARAH E. GRUNDER and LUDVIG NELSON, *Appellees.*

(86 P. 2d 495)

Opinion filed January 28, 1939.

*Robert Garvin, Evart Garvin, Morris Garvin,* all of St. John, *A. M. Ebright, Hayes McCoy, Frank H. Bacon* and *Lois Straight,* all of Bartlesville, Okla., for the appellants.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This was an action to quiet title brought by the lessee of an oil and gas lease covering property foreclosed under a prior mortgage. The appeal is from an order sustaining a demurrer to the evidence of plaintiffs and opening statement of counsel.

On September 26, 1930, Syrel A. Grunder and Sarah E. Grunder gave a mortgage of $20,000, covering 960 acres of land in Stafford county, to the Prudential Insurance Company of America.

On March 29, 1933, the same parties gave an oil-and-gas lease on 160 acres (part of the 960-acre tract included in the mortgage) to the Empire Oil and Refining Company. Thereafter and on January 31, 1934, the gas rights under this lease were assigned to the Cities Service Gas Company.

On June 7, 1935, the district court of Stafford county entered judgment foreclosing the mortgage of the Prudential Insurance Company. In the foreclosure proceedings the Empire Oil and Refining Company and the Cities Service Gas Company were joined as parties defendant and filed answers thereto.

On September 16, 1935, at the foreclosure sale, the land was sold to the Prudential Insurance Company, and a certificate of purchase was issued to the purchaser. On March 17, 1937, a sheriff's deed was issued to the Prudential Insurance Company.

On April 8, 1937, the Prudential Insurance Company conveyed the 160-acre tract described in the oil-and-gas lease to Ludvig Nelson.

Syrel A. Grunder died in 1933, testate, and his widow, Sarah E. Grunder, acquired title to the land in question. After Ludvig Nelson acquired title and on April 21, 1937, he executed and delivered to Sarah E. Grunder an option to purchase the 160 acres in question, and also gave her a five-year lease thereon.

The oil-and-gas lease above mentioned contained the following provision:

"Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the lessee, at its option, may pay and discharge any taxes, mortgages, or other liens existing, levied, or assessed on or against the above-described land and, in event it exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying to the discharge of any such mortgage, tax or other lien, any royalty or rentals accruing hereunder."

The petition of plaintiffs sets out the foregoing basic facts, and further alleges:

"9. The plaintiffs allege and state that advantageous offers were made by divers persons to Sarah E. Grunder, prior to the expiration of the period of redemption, whereby she could have secured enough money to redeem said land and thereby protect the rights of these plaintiffs under the warranty contained in the oil-and-gas lease aforementioned, but the said offers were refused by the said Sarah E. Grunder for the reason that she had entered into a secret contract with the defendant Ludvig Nelson, one of the purposes of which, on the part of both said defendants, was to secretly redeem said land and thereby unlawfully and fraudulently destroy the rights of these plaintiffs under the valid and subsisting oil-and-gas lease heretofore mentioned.

"10. The said defendants knew that the land herein involved was believed to be valuable oil-and-gas land and the said defendants knew that under the law of Kansas the aforementioned oil-and-gas lease held by the plaintiffs would be of no further force and effect if no redemption were effected. The said defendants knew that if no redemption were made, the purchaser at foreclosure sale could then lease for oil-and-gas mining purposes the said heretofore described land for a valuable bonus.

"11. The plaintiffs aver that the defendants and certain other persons to plaintiff unknown, knowing the facts set forth in paragraphs 9 and 10, conspired and agreed between themselves, prior to March 16, 1937, as follows, to wit: that defendant Sarah E. Grunder should not redeem the said land; and after the sheriff's deed had issued to the Prudential Life Insurance Company of America, the defendant Ludvig Nelson would buy the said land from the aforementioned insurance company; and that the said Ludvig Nelson during a five-year period would pay over to the said Sarah E. Grunder all delay rentals received by him under any oil-and-gas leases on the said 960 acres, which had been found to be superior to any lien, right, title and interest of the Prudential Life Insurance Company in the aforementioned foreclosure suit; and that the said Ludvig Nelson, as the record fee-title owner of said lands, would have the right to execute new oil-and-gas leases on those lands which had been cleared of oil-and-gas leases by the foreclosure proceedings heretofore mentioned, in the event there was no redemption; and that the said Ludvig Nelson should retain the valuable bonus which he would receive as consideration for said leases; and that the said Nelson would pay over all delay rentals on said future leases to Sarah E. Grunder; and that Sarah E. Grunder should have a five-year period within which to redeem the surface of said land; and that at the end of the five-year period the said Nelson would convey to the said Sarah E. Grunder an undivided one-fourth (¼) of the minerals in and to said lands; and that the said Ludvig Nelson should reserve to himself an undivided three-fourths (¾) interest in and to the minerals in and under said lands."

The case was tried to the court. Counsel for plaintiffs in his opening statement, as shown by the abstract, declared:

"He further stated that the Prudential Insurance Company held a prior mortgage in the amount of $20,000, covering 960 acres of land, of which the

land in controversy (160 acres) was a part; that this mortgage was foreclosed; that the Empire Oil and Refining Company and the Cities Service Gas Company were made parties defendant; that the decree of foreclosure provided for marshaling so that the property should be first offered for sale subject to the oil-and-gas lease, and then free and clear of the same; that the land was sold free and clear of the oil-and-gas lease to the Prudential Insurance Company of America and that the statutory period of redemption expired March 16, 1937.

"He stated that in early February, 1937, prior to the expiration of the statutory period of redemption about a mile east of the property in controversy a producing well was brought in, and immediately there was unusual oil activity in the neighborhood. The Empire Oil and Refining Company (the predecessor in title of the plaintiff, the Cities Service Oil Company) and the Cities Service Gas Company did not wish to spend between thirty-two and thirty-three thousand dollars in redeeming the land and consequently decided to rely on the covenant of warranty and to defend, which bound the appellee, Sarah Grunder. March 16, 1937, passed, and the Prudential Insurance Company took title to the land under sheriff's deed, and about two weeks later conveyed the land to Ludvig Nelson, one of the appellees in this case. Ludvig Nelson then gave Sarah Grunder a five-year unrecorded farming contract at $1,000 per year, she to pay the taxes, and gave her an unrecorded option contract with the right to redeem the surface and one-fourth of the royalty at any time before the five years from date on the payment of $20,000. In any event, Ludvig Nelson would retain three-fourths of the royalty, and the right to make new leases on this 960 acres of land.

" 'And we think that this agreement between Ludvig Nelson and Sarah Grunder was equivalent to a redemption by her with Ludvig Nelson's money; and, therefore, our oil-and-gas lease is still good.'

" 'We admit that if there had been no collusion between Ludvig Nelson and the mortgagor, we would be out. If they had let it go to sheriff's deed, without any agreement whatever, and had bought it from the Prudential after March 16, we wouldn't be here claiming any title to this lease, but they didn't do that. They made a contract with Prudential, they paid their money before March 16. They redeemed this land on the 13th of March before the time had expired. They had everything sewed up.' "

The following colloquy between court and counsel occurred:

" 'There is only one question in the case, and that is whether there is any collusion. Is that the question in the case?

" 'I think so.' "

In ruling on the demurrer to plaintiff's evidence, the court stated:

"The demurrer is sustained. I don't think you have proven one iota of fraud here. I haven't seen any fraud that has been practiced, in my extremely humble opinion. I don't see any fraud about it. I wouldn't submit this to a jury for a fraud cause from what I have heard of it. What would

I instruct them on? Fraud is false representation 'of a material fact, and the other person must rely upon it to their damage. Mrs. Grunder is not guilty of any fraud; she is guilty of trying to save her land, but she is not guilty of any fraud, or conspiracy, or underhanded deal, or anything else."

Plaintiffs contend that Ludvig Nelson, who has the legal title to the land, is in truth and fact merely trustee for Sarah E. Grunder, the beneficial owner; that as alleged in the petition these parties conspired and agreed between themselves, and with other persons to plaintiffs unknown, that Sarah E. Grunder should not redeem the land; that Nelson would go through the form of buying the land from the Prudential Insurance Company; that during a period of five years Nelson would allow Sarah E. Grunder to receive delay rentals on any oil-and-gas leases on the 960 acres found to be superior to the Prudential Mortgage lien; that Nelson would have the right to execute new oil-and-gas leases on the lands cleared of oil-and-gas leases by the foreclosure; that Nelson would retain the valuable bonus on such new leases, and would pay over the delay rentals on future leases to Sarah E. Grunder; that Sarah E. Grunder would be given a five-year period to reedem the surface of the land; that at the end of the five-year period Nelson would convey an undivided one-fourth of the minerals in such lands to Sarah E. Grunder; that Nelson would permit Sarah E. Grunder to keep possession of the 960 acres under the form of a lease. It is contended that under the warranty in the oil-and-gas lease dated March 29, 1933, a duty was imposed on Sarah E. Grunder either to pay the Prudential mortgage or to redeem therefrom; that in the face of this legal duty Sarah E. Grunder agreed with Ludvig Nelson that he would secretly exercise her right of redemption and obtain the legal title; that Nelson performed his part of the agreement; that redemption was in fact made; that allowing the sheriff's deed to be made to the Prudential and taking a deed back from the Prudential was a mere formality; that in truth and in fact Sarah E. Grunder is the beneficial owner of the land, and that the oil-and-gas lease of plaintiffs' is in full force and effect.

In support of these contentions plaintiffs assert that the covenant of warranty runs with the land; that the covenant is a contract not only with the immediate grantee but with subsequent owners who derive title through the grantee. The case of *Bedell v. Christy*, 62 Kan. 760, 763, 64 Pac. 629, is relied upon. In that case it was said:

"Assuming, as we may, that the covenants of warranty and quiet enjoyment are mainly identical, and if we further assume that the petition of

Christy alleged a right of recovery on the covenant of quiet enjoyment, he must fail, as the facts show that the covenant was not broken. Both of. the covenants relate to the possession, and assure quiet enjoyment of the estate conveyed. To constitute a breach, it is generally held that there must be not only a disturbance of possession, but the eviction must be under an adverse and paramount title which existed when the covenant was made. An entry by an intruder, or by anyone else, without lawful right and superior title is not a breach of the covenants, and in such case the remedy of the grantee is against the wrongdoers and not the covenantor."

Plaintiffs also quote *Bolinger v. Brake*, 57 Kan. 663, 669, 47 Pac. 537, where it was stated:

"We think, however, that there is a broad distinction between the two covenants, which the courts cannot properly ignore. The covenant of seizin is of the present tense, and if the covenantor has not the title, there is a breach of the covenant as soon as it is made. It is strictly a covenant for title. The covenant of warranty is of the future tense, and binds the covenantor to defend the title when it shall be assailed, and to make good the loss, within certain limitations, which may then be sustained. It is essentially a covenant against the loss of possession, and a right of action upon it does not accrue until the covenantee is disturbed."

Plaintiffs invoke the fundamental principle that a court of equity regards substance and not form, and rely on *Hayden v. Hughes*, 147 Kan. 511, 77 P. 2d 938, and *Reitze v. Humphreys*, 53 Colo. 177, 125 Pac. 518, as supporting their contention that Nelson holds the land upon a constructive trust for Sarah E. Grunder.

The question presented is whether the court erred in sustaining defendants' demurrer to plaintiffs' evidence and the opening statement of counsel. The guide rules to test the sufficiency of the evidence upon a demurrer are well settled. In the early case of *Wolf v. Washer*, 32 Kan. 533, 4 Pac. 1036, the rule was formulated as follows:

". . . upon a demurrer to evidence the court cannot weigh conflicting evidence, but must consider as true every portion of the evidence tending to prove the case of the party resisting the demurrer. . . . . If in the present case no demurrer to the evidence had been interposed, and the case had been submitted to the court upon the evidence introduced, for a decision upon the merits as to what the conflicting and contradictory evidence in fact proved, and the court had decided the case in favor of the defendants and against the plaintiff, the decision in all probability would be right; for in such a case the court would have weighed the conflicting and contradictory evidence, and would have decided the case upon the preponderance of the evidence; but the court cannot do such a thing where a demurrer to the evidence is interposed, and where the court decides the case as a question of law upon the demurrer." (p. 537.)

In *Shoup v. First Nat'l Bank,* 145 Kan. 971, 975, 67 P. 2d 569, the rules were restated:

"The court is bound to consider all of plaintiff's evidence as true; to consider only the evidence favorable to him and to disregard that unfavorable to him; to make not only inferences favorable to plaintiff but all inferences possible in his favor; not to weigh one part of his evidence that is contradictory of another part nor to weigh any differences between his direct and cross-examination. (*Hill v. Southern Kansas Stage Lines Co.,* 143 Kan. 44, 53 P. 2d 923; *Meneley v. Montgomery,* 145 Kan. 109, 64 P. 2d 550.) And if there is any evidence which sustains plaintiff's case, the demurrer should be overruled. (*Prewett v. Sholl,* 120 Kan. 158, 242 Pac. 149.)"

As the record before us fails to show any evidence to support the issues raised by the pleadings, we think the ruling of the trial court in sustaining the demurrer to plaintiffs' evidence must be upheld. The petition charged that Sarah E. Grunder, Ludvig Nelson and other persons, to plaintiffs unknown, conspired and agreed among themselves to do and perform certain acts, the purpose of which was to defraud the plaintiffs by cutting out their oil-and-gas lease through a simulated foreclosure. The charge is that defendants had been guilty of actual fraud and collusion. Thus actual fraud was the gravamen of plaintiffs' cause of action. Counsel for plaintiffs in his opening statement admitted that if there had been no collusion between Nelson and the mortgagor, the plaintiffs would have no case. A careful examination of the record fails to disclose any testimony of any kind tending to show fraud or collusion.

There is no fiduciary relationship between mortgagor and mortgagee. The relationship between the parties is not fiduciary, but adversary. (3 Tiffany on Real Property, p. 2424; Keigwin, Cases on Mortgages, 323.) Ordinarily they deal at arms length. No fiduciary obligation was imposed on the mortgagor. The plaintiffs were parties to the foreclosure suit and had an opportunity to redeem from the mortgage and preserve their rights under the oil-and-gas lease. They failed to exercise that right.

In this view of the case it is unnecessary to determine the effect of the warranty clause in the oil-and-gas lease. Plaintiffs' action was based on fraud and collusion. The proof failed. They cannot now claim a constructive trust on the theory of constructive fraud. Giving plaintiffs the benefit of every inference to be gleaned from the testimony, fraud was not established.

The judgment of the trial court is affirmed.