No. 43,196

Leona M. Wiebe, Administratrix of the Estate of Henry J. Wiebe, Deceased, *Appellee,* v. Walt Keeler Company, Inc., *Appellant,* and Walt Keeler, *Defendant.*

(383 P. 2d 945)

Opinion filed July 10, 1963.

*Donald A. Bell,* of Wichita, argued the cause, and *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Charles W. Harris, Orval J. Kaufman, J. Ruse McCarthy, J. L. Weigand,* and *Spencer L. Depew,* all of Wichita, were with him on the briefs for the appellant.

*Lee R. Meador,* of Wichita, argued the cause, and *Otto J. Koerner* and *John B. Wooley,* both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This is an action to recover rental for the use of concrete forms. The controversy has developed largely into a dispute over the ownership of the forms.

The action was instituted by Henry J. Wiebe as plaintiff against the Walt Keeler Company, Inc., and Walt Keeler individually. The trial court sustained a demurrer to plaintiff's evidence as to Walt Keeler, and no appeal was taken therefrom, leaving the Walt Keeler Company, Inc., as the only defendant in the case. In further clarification of the record, it may be stated that Henry J. Wiebe died after the appeal was perfected and his widow, Leona M. Wiebe, Administratrix of his estate, has been substituted as appellee.

The petition alleges, in substance, that during the month of March, 1956, the defendant corporation, through Walt Keeler,

rented from the plaintiff 4,347 square feet of concrete forms at a monthly rental of ten cents a square foot. No written contract was entered into but defendant sent its trucks and did pick up and use the forms in construction work. Plaintiff made demands for the payment of the rental which was refused. There is due and owing as of March 21, 1959, thirty-six months rental on the forms at $434.70 a month or a total of $15,649.20.

The defendant filed its answer in which it denied that it had agreed, through Walt Keeler or otherwise, with the plaintiff to rent from him the concrete forms on the basis of ten cents per square foot a month or any other basis. It then alleges that sometime during the year 1956 Walt Keeler talked with the plaintiff as president of Prestress Engineering Co., Inc., of the possibility of Walt Keeler Co., Inc., using the concrete forms on a loan basis, that at no time during said discussion did the plaintiff claim or attempt to claim ownership of said forms, but that the forms were in fact owned by Prestress Engineering Co., Inc., and that the plaintiff, Henry J. Wiebe, individually, is not the proper party in interest to prosecute this action. Defendant further alleged that the plaintiff should be estopped to prosecute this action and to claim ownership of the concrete forms in question for the reason that said plaintiff for a considerable period of time acquiesced in the possession of said forms by the defendant, made no demands for over two years for the payment of rent, led the defendants to believe that their understanding of the contractual arrangement between the parties was correct, and failed to inform the defendant of his demands and assertions. All to the prejudice of the defendant.

The jury answered special questions and returned a general verdict in favor of the plaintiff in the amount of $5,868.45 which was approved by the court. The defendant has appealed. The general facts may be summarized.

The appellee, prior to 1954, was in the general contracting business and a customer of appellant who is in the ready-mixed concrete business. In late 1953, appellee approached Walt Keeler, president and major stockholder of appellant, relative to a new venture known as prestressed concrete reinforcement.

The Prestress Engineering Company, Inc., had previously been formed by appellee and incorporated in November of 1953. On May 28, 1954, appellant agreed to furnish a plant site then owned

by it in return for $15,000 worth of stock being one-fourth of the shares of stock issued by the company. M. A. Isern put up $15,000 cash in return for one-fourth of the shares issued. Appellee was to have the other half of the shares issued for his "knowhow" and the contracting equipment which he owned that was suitable to the stress operation.

The appellee moved his equipment to the company's property. The equipment included trucks, concrete mixers, and a variety of assets. Later in 1954 the concrete forms, which are involved in this controversy, were gathered from various job sites, reconditioned and stored at the rear of the company's property. Shortly after the deal was consummated, the appellee made an inventory of the equipment which he was turning over to the company. The inventory was placed in the company's files. It did not include the concrete forms.

About March, 1956, Walt Keeler approached the appellee and suggested that the appellant was constructing a concrete plant on West Highway 54 and asked for permission to use the forms.

Shortly after the conversation, the appellant began moving the forms to the location mentioned. The forms were not moved all at one time but it appears that they were all taken prior to June, 1957. Some months after the forms were taken, the appellee started billing the appellant for rental. The appellant did not respond to the billings, hence this lawsuit.

The appellant first complains that the trial court erroneously refused to give certain requested instructions to the jury.

Appellant requested the following instruction:

"If you should find that any witness has wilfully testified falsely to any material fact, you are justified in disbelieving all that such witness may have testified to, unless such witness is corroborated by other witnesses whom you do believe, or by other credible evidence."

The only instruction given by the court, bearing on the credibility of witnesses was as follows:

"You are the exclusive judges of all the facts appearing in the case, of the weight of the evidence and of the credibility of the witnesses. It is for you to decide what weight shall be given to the evidence and what credit shall be given to the testimony of the various witnesses."

The appellant calls our attention to the fact that this court has recognized the propriety of the instruction requested. So it has. (*Burgess v. Alcorn*, 75 Kan. 735, 90 Pac. 239; *State v. Towle*, 132

Kan. 296, 295 Pac. 645; and *State v. Kelly,* 131 Kan. 357, 291 Pac. 945.) However, appellant has cited no cases where this court has held the failure to give the instruction constituted prejudicial error.

The appellant relies heavily on *State v. Boyles,* 34 Ida. 283, 200 Pac. 125, where it is stated:

"We are of the opinion, however, that the refusal of such an instruction is reversible error when from the record it is clearly apparent that one or more witnesses have deliberately and wilfully given contradictory testimony as to a material fact, or there is a palpable and irreconcilable conflict between the evidence of different witnesses as to material matters. (Citations omitted.) ·

"In the case at bar numerous witnesses testified on behalf of the state and of appellant, and there are direct, positive and irreconcilable conflicts in the evidence as to the essential and material facts involved in the action.

"The refusal to give the requested instruction was error. (*State v. Waln,* 14 Ida. 1, 80 Pac. 221.)"

The case appears to follow the general rule as stated in 88 C. J. S. Trial § 315c, p. 835:

"The necessity of giving an instruction authorizing the jury entirely to disregard testimony of a witness testifying falsely to a material fact rests largely in the discretion of the court. Such an instruction is not one which should be given as a matter of course, but, where it is warranted by the evidence, according to the rule of some cases the court is bound to give it. Before such an instruction is required to be given in any case, there must be evidence that a witness willfully testified falsely on a material issue before the court.

"The instruction is always calculated to intimate that, in the opinion of the court trying the case, some of the witnesses had testified falsely, and should, therefore, it has been said, ordinarily not be given. It should never be given unless the trial judge strongly suspects that willful false swearing has been done in the case; but, where there is palpable false swearing in the case, either party so requesting is entitled to it, and it is proper to give it where there is a sharp conflict in the evidence. . . ."

We find no positive irreconcilable conflict in the testimony of the witnesses as to the material facts involved, such as to justify invoking the rule in this case.

The appellee testified positively that the forms were not included in the equipment passing to the Prestress Engineering Company. He also testified positively as to the rental agreement. Mr. Isern, the third party to the original arrangement, testified frankly that he did not know whether the forms were to be transferred to the Prestress Engineering Company. He stated:

"I am very vague as to the assets to be transferred."

Mr. Keeler testified that he knew nothing about Mr. Wiebe's equipment until it appeared on the premises of the Prestress Engi-

neering Company. When the corporation's name was painted on the equipment, he assumed it belonged to the company. There is no evidence that the company's name was painted on the forms. Mr. Keeler further testified when asked as to the conversation with appellee as to the use of the forms: "I don't recall exactly what Mr. Wiebe said." The testimony, rather than presenting a conflict, indicated honest inability on the part of the witnesses for appellant to remember.

The instruction, if given, might well have intimated to the jury that it should start searching for false testimony. There was no error in failing to give the instruction under the facts in this case.

The appellant objects because the trial court refused to give requested instructions on the doctrine of equitable estoppel. Conceding that the appellant's requested instructions properly stated the law on equitable estoppel, there was no evidence to justify the submission of the question to the jury.

The parties were dealing at arms length. There is no evidence that the appellee made any misrepresentations as to the ownership of the forms. They were not listed in the inventory of the assets to be transferred. On this issue a simple question was presented as to whether the forms were owned by the appellee or had been transferred to the Prestress Engineering Company.

Requested instructions, although correctly stating a principle of law, should not be given if there is no evidence which brings the issue into the case. (*Zook v. State Highway Comm.*, 156 Kan. 79, 131 P. 2d 652, 145 A. L. R. 129n.; *Auwarter v. Kansas City*, 136 Kan. 571, 16 P. 2d 547, and *Townsend, Administrator v. Jones*, 183 Kan. 543, 331 P. 2d 890.)

The appellant contends that the trial court erred in refusing to submit five requested special questions to the jury. The trial court did in effect give two of the requested instructions. Two of the other requested instructions presented questions pertaining to equitable estoppel. As we have previously stated, there was no evidence which raised an issue of equitable estoppel. A special question should not be submitted on an issue which is not supported by the evidence submitted. (*Fidelity Savings State Bank v. Grimes*, 156 Kan. 55, 131 P. 2d 894.)

The jury answered a special question as to whether the parties did or did not enter into an oral agreement for the rental of the forms, as contended by the appellee, in the affirmative. The appel-

lant objects because the court did not further require the jury to state "what do you find were the terms of such rental?" The special question was too broad. The special question did not ask for the rental price or an answer to any other single issue. It, in effect, asked the jury to set out all of the terms of the rental agreement. A special question should distinctly present a single material fact involved in the issues of the case. A special question should not be submitted which requires a jury to state the evidence in detail, explanatory of the general questions. *Webb v. Boulanger, et al.,* 116 Kan. 711, 229 Pac. 754.)

The record discloses no trial errors which would justify a reversal. The judgment is affirmed.

APPROVED BY THE COURT.