Rosenfeld Co. v. Gleed.

---

No. 23,322.

S. ROSENFELD COMPANY, *Appellee*, v. FRED GLEED and HERBERT GLEED, Copartners, etc. (FRED GLEED, *Appellant*).

### SYLLABUS BY THE COURT.

TRIAL—*Demurrer to Evidence—Court Cannot Weigh Conflicting Evidence.* The rule that on a demurrer to the evidence the court can take into consideration only those facts and inferences of fact which are favorable to the other party and cannot consider the evidence of the demurring party which tends to break down the case of the party resisting the demurrer, is applied to the evidence offered in support of a cross-petition, and *held,* that it was error to sustain the plaintiff's demurrer. (*Can Co. v. Ross,* 72 Kan. 669, 83 Pac. 616; *Kerr v. Kerr,* 85 Kan. 460, 116 Pac. 880.)

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed December 10, 1921. Reversed.

*John J. Riling,* and *Edward T. Riling,* both of Lawrence, for the appellants. *C. C. Stewart,* of Lawrence, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Plaintiff is engaged in the produce commission business in the city of New York. The defendant, Fred Gleed, is engaged in the same business at Lawrence, Kan., his son, Herbert Gleed, being manager. On August 19, 1919, Fred Gleed sent the following telegram to plaintiff:

"Have car fresh candled eggs storage packed firsts shipment Wednesday if you care to buy outright wire price net New York. If not do you care to handle on consignment state terms and amount draft I can draw."

On the same day he received an answer instructing him to consign and draw $11 per case. He wired an acceptance, stating that loading would begin Wednesday. A letter of confirmation was sent to him by the plaintiff under date of August 20. The day following he wrote that he had shipped "one car eggs, six hundred cases,"

and had drawn draft for $6,600, bill of lading attached. August 23, plaintiff wrote him to advise his bank to hold draft on arrival and to allow inspection "as this time of the year we inspect the goods before we pay the draft, and if the eggs are as represented to be, we pay the draft then." Two days later he received a telegram from plaintiff requesting him to "wire bank to hold draft on arrival, wire railroad to deliver us twenty-five cases for inspection. Must inspect eggs before payment draft." On receipt of this Gleed wired plaintiff as follows: "Hold car eggs on arrival and wire for advice stating conditions." On the same day his son, Herbert Gleed, went to New York and was there when the eggs arrived.

Plaintiff was to receive a commission of one and one-half cents per dozen, and the custom of the trade required consignee to pay the freight, cartage, and any necessary costs of repacking, in case that became necessary, and that the consignor should repay such sums.

Claiming that a large number of the eggs were found to be broken and otherwise damaged, plaintiff brought this action against Fred Gleed and his son, Herbert Gleed, claiming they were partners, to recover $1,224.49, covering freight charges, cartage, $56 for repacking and $100 cash advanced in addition to payment of the draft.

The defendant filed an answer and cross-petition consisting of a general denial, with a special denial that defendants were co-partners. It was alleged that the eggs were delivered to plaintiff in New York City in first-class condition, and salable, neither musty nor otherwise damaged as alleged in the petition; that the reasonable market value of the eggs was fifty cents per dozen or $9,000 in the aggregate; that if the eggs were sold for less it was because the plaintiff failed to exercise reasonable care, skill and diligence in handling and selling them; that if the eggs were in the condition alleged, they became so after they were received by plaintiff. The cross-petition asked for judgment against plaintiff for a balance of $1,440.46 claimed to be due Fred Gleed.

Issues were joined, and the case came on for trial. The court, after examining the pleadings, ruled that the burden was on plaintiff "if he wants to hold Herbert Gleed, to prove that he was a partner, and to show that it was necessary to repack the eggs at the cost of $56. After those two things, the burden is on the defendant. Under the pleadings everything is admitted that the

Rosenfeld Co. v. Gleed.

plaintiff charges, except the partnership of Herbert Gleed, and the $56."

Notwithstanding this ruling, plaintiff assumed the burden, offering all of its evidence. The assistant manager testified that the eggs were damaged and were musty and the musty smell was noticeable when the cases were opened and offered for sale; that they were not salable in the condition in which they arrived and that it was necessary to repack them; that plaintiff does not handle other produce than eggs and butter and that defendant's eggs not offered for sale immediately were kept in the refrigerator in plaintiff's building. He also testified that Herbert Gleed was present when some of the eggs were offered for sale, and in his presence plaintiff was offered forty-three cents per dozen for the eggs, and that Herbert Gleed was perfectly satisfied to sell them for that price.

Samuel Rosenfeld, an officer of the plaintiff corporation, testified that the eggs were found to be broken, damaged and musty on being removed to plaintiff's building; that plaintiff tried to sell the eggs but the customers returned them; that Herbert Gleed told them to sell them that way; if they could not, to put them in shape so they could be sold; that he told them to sell them for forty-three cents per dozen. He testified from his experience that these eggs had been kept in storage with some other produce. He was corroborated as to the condition of the eggs by a number of employees. One testified that Herbert Gleed was there while the eggs were repacked. Another employee testified that Herbert Gleed told Mr. Rosenfeld that he had kept the eggs in cold storage for about a month, and that Rosenfeld told him there would be an amount due the plaintiff for overdraft on the car; that Gleed said, "all right, he would send him a check for the difference" and to "do the best you can and get the best price for those eggs."

The defendants offered their testimony. Herbert Gleed testified that his father had been in the business of handling eggs and poultry for about twenty years; that he was manager of his father's business and was not a partner; that the eggs in question were brought to their place of business by the farmers in the neighborhood, were carefully candled, and all small eggs, cracked ones, and those that showed any inferior quality were taken out and number one eggs packed and sent daily to the cooler; that all the eggs shipped to the plaintiff were candled by witness and Robert Davis; that he was

about three weeks accumulating this carload; that he had had fifteen years' experience; that the eggs shipped to plaintiff were number one eggs; that none of the culled or small or inferior eggs were put in the cooler and there was nothing kept in the cooler but the eggs; that he had learned from experience that it would injure the quality of eggs if they were kept with fruit, and that he always kept the eggs away from fruit or anything that would injure their quality; that these eggs were loaded in the refrigerator car which was properly iced.

In explanation of how he happened to go to New York he testified:

"After they told me to draw eleven dollars which I did and then receiving a wire from them telling me they couldn't pay the draft until they had inspected them, and I knew what had happened to me about a year previous; that I stopped a deal like that by going, and probably it was another case of the same kind, and I would see how my goods really arrived; thought maybe they fixed to put a deal on me."

His testimony as to what took place after the carload of eggs had arrived and were being unloaded, in substance, was: Mr. Rosenfeld said, "Here are your eggs." The cases were on the floor of the store room and nothing was said about their condition at that time. The witness remained there about four days calling each day at the plaintiff's place of business. The first day "everything seemed to be moving along" all right, and the next morning, Saturday, he was there for possibly fifteen or twenty minutes, and "everything was agreeable," and after that he went out for dinner. He returned Tuesday afternoon and "everything seem all well and good" and he was told that plaintiff had moved about half of the eggs. He then stated that he intended to leave New York that night and would possibly need about $100 and "without a word he [Rosenfeld] handed me $100 in cash. . . . We were expecting more money all that time." While the witness was there, the plaintiff sold a number of the cases of eggs. He did not ask what they were selling for, but he knew eggs of this class were selling on the produce exchange for from fifty to fifty-one cents per dozen. None of the eggs were repacked while he was in New York.

He contradicted the testimony of the employees of plaintiff as to statements alleged to have been made by him and denied that he had given instructions to sell the eggs at a reduced price. He stated that the eggs were classed in New York as "fresh eggs," and that the first he knew of anything being wrong with them was ten days after

Rosenfeld Co. v. Gleed.

he had returned from New York. Employees of the defendant testified to the manner in which the particular eggs were candled and stored. One of the witnesses who had fifteen years' experience testified that there was nothing in the cooler where the eggs were stored except these eggs, which were placed there each day as they were brought in by farmers, and that none had been in cold storage longer than three weeks. Other witnesses testified to the manner in which the eggs were candled and that all the cracked ones, small ones or "leakies" were taken out and nothing but number one eggs taken to the cooler; that there was nothing put into the car after the eggs were loaded; that the six hundred cases filled the car; and that the car was iced with instructions on the bill of lading as follows: "Under refrigeration. Ice to full capacity at all regular icing stations."

After testimony showing that none of the eggs had been in storage longer than three weeks, the defendants offered the testimony of experienced witnesses to the effect that the rule laid down by the United States food administration and adopted generally in this country is that an egg that has been held in storage under thirty days is classed as a fresh egg.

Defendants rested and counsel for plaintiff demurred to the evidence "so far as it shows any defense to the action of the plaintiff and also so far as it tends to show any causes of action in their favor. I particularly refer to the fact that they have given no evidence at all as to the value of those eggs on the market in New York."

The court ruled that there was no evidence to submit to the jury on any proposition except the issue whether Herbert Gleed, the manager, was a partner of his father, and whether it was reasonable and necessary after the eggs arrived for plaintiff to repack them, and whether Mr. Gleed authorized plaintiff to do that. The jury was told that the burden was upon the plaintiff to prove two things in order to recover the full amount it asked against the defendants: first, that the two Gleeds were partners; second, that the claim of $56 was necessarily expended for repacking.

The jury found that the defendants were not copartners and under the instructions there was nothing for them to do but find a verdict against Fred Gleed for the amount claimed by plaintiff.

Fred Gleed's motion for a new trial was denied, and he appeals.

In plaintiff's brief, two points are stressed. *First*, it is said that

the eggs "were admittedly and without question storage eggs." This contention rests upon counsel's own construction of the telegram offering the eggs for purchase or sale on commission: "Have car fresh candled eggs storage packed firsts shipment Wednesday," etc. The plaintiff offered no testimony of experts or others showing that fresh eggs become storage eggs merely because they have been candled, graded and are being held at the moment in cold storage awaiting a purchaser. In claiming that the eggs were admittedly storage eggs, counsel ignores the statement of Herbert Gleed that the eggs were classed as fresh eggs and the testimony of several witnesses who told how the eggs were gathered and of other witnesses who testified that eggs held in storage less than thirty days are classed as fresh under the rule of the United States food administration which prevails throughout the country.

The special ground upon which counsel demurred to the evidence was stated to be "the fact that they have given no evidence at all as to the value of those eggs on the market in New York." The *second* point urged in counsel's brief is that "if we notice the evidence of Herbert Gleed, who was the only witness of appellant regarding the price of eggs at New York during the time these eggs were there for sale, we will see that he testified only to the price of fresh eggs on that market at that time." The evidence of the witness was that he knew eggs of this class were selling on the exchange for from fifty to fifty-one cents per dozen. This was on the produce exchange. It is true he testified that he did not know what storage eggs were selling for on the exchange. But this was because he was not interested in the price that storage eggs were selling for. He testified that the eggs in question were classed as fresh eggs. We are at a loss to understand how it can be contended that there was no evidence to show the market value of these particular eggs in New York.

Again it is said in the brief:

"They say they ordered the car iced. They do not know whether or not it was actually iced enroute to New York, and they entirely fail to show that the car was in proper condition to keep the eggs from becoming musty."

It was not claimed in the plaintiff's pleadings nor in its proof that the car did not arrive in New York City properly iced. The contention now seems to be that defendant's case on the cross-petition failed because he neglected to offer affirmative proof that the car was kept iced as directed. Of course, when plaintiff opened the car to take out the twenty-five cases of eggs for inspection before

paying the draft, it must have discovered whether the car was in proper condition of refrigeration. Herbert Gleed was not present when the car was opened upon its arrival in New York. The demurrer admits that the car was properly iced when it left Lawrence, and that the bill of lading contained instructions to the railway employees to keep it iced at all proper icing stations. If any presumption is to be indulged it is that the instructions of the shipper were carried out.

The court cannot weigh conflicting evidence, but must assume that all the competent evidence demurred to is true. (*Bequillard v. Bartlett,* 19 Kan. 382.) A demurrer to evidence admits every fact and conclusion which the evidence most favorable to the other party tends to prove or which may be fairly deduced. (*Christie v. Barnes,* 33 Kan. 317, 6 Pac. 599; *City of Syracuse v. Reed,* 46 Kan. 520, 26 Pac. 1043; *Hoffmeier v. Railroad Co.,* 68 Kan. 831, 75 Pac. 1117.) The court can take into consideration only those facts and inferences of facts which are favorable to the other party and cannot consider the evidence of the demurring party which tends to break down the case of the party resisting the demurrer. (*Can Co. v. Ross,* 72 Kan. 669, 83 Pac. 616.) It is not the province of the court to determine which one of several fair inferences may be drawn from the proven facts, nor to weigh fact against fact. (*Kerr v. Kerr,* 85 Kan. 460, 116 Pac. 880.)

Here the parties testified directly contrary to each other but there were circumstances surrounding the transactions and the relations of the parties which the jury might consider to aid them in judging of the reasonableness of the opposing claims.

The special ground upon which the trial court sustained the demurrer is thus stated:

"Ordinarily if a consignor of goods alleges negligence or misconduct of a factor the burden lies on the consignor to prove it, but when a *prima facie* case of negligence of the factor is established the burden is on the latter to show facts relieving him from liability." (*Brown v. Funck's Estate,* 89 Kan. 601, syl. ¶ 3, 132 Pac. 202.)

This rule of law is a sound one, which might have found an appropriate place in an instruction for the purpose of guiding the jury in passing upon the conflict in the evidence.

The judgment is reversed and a new trial ordered.