No. 24,270.

F. A. ROWAN, *Appellant,* v. HENRY ROSENTHAL and H. K. BEARD-MORE, as partners, *Appellees.*

### SYLLABUS BY THE COURT.

1. DEMURRER TO EVIDENCE—*Court May Not Weigh Conflicting Evidence in Ruling on a Demurrer Thereto.* In considering a demurrer to the evidence, the court cannot weigh that which is conflicting, but must consider as true every portion which tends to prove the case of the party resisting the demurrer.

2. SAME—*Matters to Be Considered in Ruling on Demurrer to Evidence.* A demurrer to the evidence of plaintiff should not be sustained unless the court is able to say that, admitting every fact that is proven which is favorable to the plaintiff, and admitting every fact that the jury might fairly and logically infer from the evidence favorable to the plaintiff, still, the plaintiff has failed to make out some one or more of the material facts of his case.

Appeal from Sedgwick district court; division No. 1; THOMAS E. ELCOCK, judge. Opinion filed June 9, 1923. Reversed.

*Roscoe King, R. L. King, W. H. Carpenter, W. R. Carpenter,* all of Marion, and *Z. Wetmore,* of Wichita, for the appellant.

*C. A. Matson,* and *I. H. Stearns,* both of Wichita, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: Plaintiff sued to recover an interest in a string of oil-drilling tools. A demurrer to his evidence was sustained and he brings the case here.

Plaintiff alleged in his petition, among other things, substantially as follows:

That, in June, 1920, while plaintiff was in the employ of defendants, drilling oil and gas wells for defendants, plaintiff and defendants entered into an oral contract by the terms of which, plaintiff was to act as driller for defendants, and to operate a certain string of tools owned by defendants; that defendants agreed to give plaintiff, in addition to the usual wages for this labor, a one-fourth of the

profits realized out of the wells drilled by plaintiff with the string of tools; that plaintiff was to be paid the one-fourth interest of said profits, by defendants giving him a one-fourth interest in the string of drilling tools used by him in drilling the wells for the defendants, when the profits due plaintiff amounted to enough to pay for the price of the one-fourth interest in the tools; that, after the one-fourth interest in the tools was paid for out of the profits, then plaintiff was to have one-fourth of the profits which were realized out of the drilling of the wells by plaintiff with the tools, which was to be paid to plaintiff in cash; that, in pursuance of the contract, he furnished his services, and continued to drill for the defendants, and defendants collected and received the profits from the drilling of such wells until the plaintiff's one-fourth of the profits amounted to enough to entitle plaintiff to the one-fourth interest in the tools; that the defendants have excluded plaintiff from any right or interest in the tools, and denied his interest therein, and have converted them, together with plaintiff's interest, to their own use, and have removed, concealed or disposed of the tools, to the damage of the plaintiff, in the sum of $2,000, for which amount the defendants are indebted to plaintiff.

At the trial, plaintiff testified, in substance, among other things:

"In August, 1920, Mr. Rosenthal made me the proposition that he would turn me a one-fourth interest in a string of tools. . . . He says 'Right across there on the other lease for the White Eagle will be the place you will start'; . . . that he would pay me $15 a day for my work and charge us $15 for looking after the tools; that, at the end of each well, he would give us an itemized statement showing just what the well cost and what the profits were. . . . 'Your fourth profits I will keep back as pay on these tools until they are paid out.' . . . The first well drilled under the contract was on the Piper farm on the White Eagle lease. No. 2 Piper. We finished up that well at a little below 2,400 and some odd feet, . . . and in addition to that there was thirteen days of day work. Mr. Anderson worked one tower and I worked the other. A tower is twelve hours. . . . Rosenthal and Beardmore were getting $3.50 per foot for that well. . . . They also got $80 a day for day work. . . . There were thirteen days of day work at $80 a day, and the cost of labor per day for drilling this well, I think, would be about $60. Mr. Rosenthal said that the well could be run at $60 a day—the expense. This well was put down 2,450 feet in 45 days . . . The second well was on the Piper farm—No. 2, for the Tidal Oil Company. We were in the neighborhood of 45 days, possibly 50, in drilling this well, which was drilled to a depth of something over 2,400 feet. Rosenthal and Beardmore were receiving $3.50 a foot for this well. . . . The next well we drilled was Davis No. 1, for the Prairie Oil Company. This well was 2,300 and some feet. The company furnished the fuel and everything just the same as the others. The well was

drilled in thirty-one days and the same amount of labor was used, that is, the same number of hands, the same as the rest of the wells. There were four men—two men on a tower, a driller and a tooldresser. The other well we drilled was on the Jeffers farm, No. 3, for the Prairie Oil Company. We finished this well at about 2,300 feet and was 36 or 39 days in drilling it. The same number of men were used. This was the last well we drilled. . . . After we drilled the last well Mr. Rosenthal didn't settle with me. He sold the tools and denied me any interest in them. When we finished the first well I met Mr. Rosenthal at the well and he told me that Mr. Anderson and I had paid right at $3,500 on our interest on that well—the first well we drilled. At the time we were drilling No. 3 Jeffers, the last well, I had a conversation with Mr. Beardmore in regard to buying the tools. I tried to buy the tools off of Mr. Beardmore, and he priced them to me at $8,000, with $2,000 deducted, and I asked him what he meant by the $2,000 deducted, and he said that I had $2,000 paid on them. . . . The complete string of tools, at the time we got through, was worth $8,000."

Charles Elder, a witness for plaintiff, testified that he was acquainted with the plaintiff and the defendants; that he had a conversation with Henry Rosenthal relative to the employment of Rowan by Rosenthal and Beardmore, in which Rosenthal said that he was giving some of his drillers an interest in the tools—a working interest—a one-fourth interest. Later, he had a conversation with Rosenthal as to his contract with Rowan. He said he was going to give Rowan an interest in a string of tools and later he told me he had done it.

A. T. Watson, a witness for plaintiff, testified he was superintendent of the Prairie Oil & Gas Company; that he was acquainted with the plaintiff and the defendant, Rosenthal; that he had a conversation with Mr. Rosenthal in which Rosenthal stated that Rowan had an interest in the tools.

In considering a demurrer to the evidence, the court cannot weigh that which is conflicting, but must consider as true every portion which tends to prove the case of the party resisting the demurrer. Before a demurrer to the evidence of plaintiff should be sustained, the trial court must be able to say that, admitting every fact that is proven which is favorable to the plaintiff, and admitting every fact that the jury might fairly and legally infer from the evidence favorable to the plaintiff, still, the plaintiff has failed to make out some one or more of the material facts of his case. A demurrer to the evidence admits every fact and conclusion which the evidence most favorable to the adverse party tends to prove and all that may be fairly inferred from these facts, and where there is some competent legal evidence tending to sustain the plaintiff's cause of

Rowan v. Rosenthal.

action, a demurrer to the evidence should be overruled. A demurrer to plaintiff's evidence must be viewed in the light most favorable to him, and all reasonable inferences must be allowed in his favor, and unless all the testimony offered fails to establish his case, or some material fact in issue, the demurrer should be overruled. It is not the province of the court to determine which one of several fair inferences may be drawn from the proven facts, nor to weigh fact against fact.

In *Acker v. Norman,* 72 Kan. 586, 84 Pac. 531, it was said:

"It is error for a trial court to sustain a demurrer to the evidence because there is a conflict between plaintiff's testimony in chief and that given upon cross-examination. The court cannot weigh the evidence. If there is any evidence whatever to support plaintiff's case it must be left to the jury to decide its weight and credibility." (Syl. See, also, *Farnsworth v. Clarke,* 62 Kan. 264, 62 Pac. 655; *Can Co. v. Ross,* 72 Kan. 669, 83 Pac. 616; *Travis v. Simpson,* 106 Kan. 323, 187 Pac. 684; *Rosenfeld v. Gleed,* 110 Kan. 75, 202 Pac. 611.)

It may be said that plaintiff's testimony showed that he made the contract with defendants, as alleged in his petition; that he performed his part of the contract and drilled the wells. He showed the price defendants were to receive for drilling the wells, and that the oil companies were to furnish everything but the labor and drilling tools; the depth that each well was drilled, and the number of days occupied in the drilling; that defendants were paid for drilling the wells, and the amount paid to them. His evidence showed the profits made upon each well; that defendants stated that the cost to them, of drilling the wells, was $60 per day, and, by showing the depth of the wells, the price per foot and the number of days consumed in drilling each well, the profits could be deduced. He showed, by the admissions and statements of both defendants, that there was a profit in drilling the wells, and that he was entitled to $2,000 as his part thereof. He showed that defendants excluded him from any interest in the drilling tools; refused him any profits arising from the drilling of the wells, and that, "After we drilled the last well Mr. Rosenthal did not settle with me. He sold the tools and denied me any interest therein."

It would subserve no useful purpose to further detail or analyze the testimony. Giving it the fair inferences to which it was entitled under the numerous decisions of this court, it was sufficient as against a demurrer.

The judgment is reversed and the cause remanded, with directions to grant a new trial.