No. 30,313.

KENNETH WEBB, an Infant Five Years of Age, by His Next Friend, L. R. WEBB, and L. R. WEBB, *Appellees*, v. H. W. LIPPERD, *Appellant*.

(8 P. 2d 381.)

Opinion filed March 5, 1932.

*Arnold C. Todd, James G. Norton, Carl O. Bauman* and *Julian E. Ralston,* all of Wichita, for the appellant.

*C. H. Brooks, Willard Brooks, Howard Fleeson,* all of Wichita, *Guy M. Cowgill, Arthur C. Popham, Walter A. Raymond* and *J. F. Cook,* all of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action on a minor's behalf for the death of his mother which occurred when defendant's automobile capsized on a highway on the outskirts of Wichita.

The facts, in brief, were these:

L. R. Webb and Esther Webb, his wife, resided in Kansas City, Mo. He was a salesman of laundry supplies and was acquainted with the defendant, H. W. Lipperd, who was interested in the same line of business. On July 14, 1929, Webb and his wife left Kansas City in their automobile for a visit to Wichita and elsewhere. They left their infant son with relatives in Topeka and arrived in Wichita at a late hour that night. Next evening defendant Lipperd and his wife had dinner with the Webbs at the hotel, following which these four persons went to the Lipperd residence, and then, at a late hour, they took an automobile ride to the airport some distance northeast of the city. Returning from the airport, Lipperd drove the automobile and Mrs. Webb rode by his side. Mr. Webb and Mrs. Lipperd rode in the rumble seat. Part way back to town the road on which they were traveling divides into two roadways, one for westbound traffic and the other for east-bound traffic. These parallel roadways are each seventy feet wide, separated by a long, narrow elliptical tract of land lying between. Where the road from the airport thus divides there are rather abrupt rounding curves. Next to the north edge of this curve, which is the beginning of the north roadway, were tall weeds, bushes and shrubbery which shortened the view to a distance of ·a quarter of a block. As this party of four persons was rounding this curve an automobile suddenly appeared advancing toward them at high speed on the wrong side of the road. Mrs. Webb screamed; Lipperd swerved his car to the left and applied the brakes. The car skidded and then capsized into a shallow ditch at the north side of the south roadway. Mrs. Webb sustained injuries from which she died the same night.

Plaintiff brought this action against Lipperd for damages for negligence causing the death of his wife, and on his infant son's behalf for damages for the wrongful death of his mother. Defendant's answer contained a general denial and a plea of contributory negligence.

The jury returned a general verdict in favor of defendant on so much of the cause of action as related to plaintiff's claim in his own behalf, but awarded a verdict of $1,500 in favor of the infant son as his loss for the wrongful death of his mother. The jury also returned answers to some special questions:

"1. What, if anything, did the deceased, Esther Webb, say unto the defendant immediately prior to the accident concerning the manner in which the defendant was driving his automobile? A. Nothing except scream.

"2. At what rate of speed was the defendant driving his automobile immediately prior to the accident? A. Thirty-five miles per hour, which was too fast at this point.

"3. At or immediately prior to the accident was there an automobile approaching the place where the accident occurred, and the road divides from the west on the north road of Douglas avenue as it passes through Eastborough Estates? A. Yes.

"4. If you answer the foregoing question in the affirmative, then state whether or not the deceased, Esther Webb, had equal opportunity with the defendant to see and appreciate that there might be danger ahead as the automobile approached the place where the accident occurred. A. Yes.

"5. If you answer the foregoing question in the affirmative, state whether or not the deceased, Esther Webb, warned or cautioned the defendant of the approaching car. A. Yes, she screamed, but it was too late.

"6. What, if anything, did the plaintiff, L. R. Webb, say unto the defendant immediately prior to the accident concerning the manner in which the defendant was driving his automobile? A. Nothing.

"7. Had the deceased, Esther Webb, and the plaintiff, L. R. Webb, while riding in the car of the defendant, passed over the road and by the place upon which and where the accident occurred a short time prior to the accident? A. No.

"8. Did the defendant, immediately prior to the accident, and while approaching the point in the road where the accident occurred, swerve or turn his car to the left? A. Yes.

"9. If you answer the foregoing question in the affirmative, state what caused or prompted the defendant to so swerve and turn his car to the left. A. The approaching car."

Defendant filed a motion for a new trial, but later withdrew it and filed a motion for judgment on the special findings. This was denied and judgment was entered on the verdict.

Defendant appeals.

It will be noted that defendant withdrew his motion for a new trial, so there is nothing before this court concerning the sufficiency of the evidence which can now be reviewed. (*McClain v. Railway Co.*, 89 Kan. 24, 28, 130 Pac. 646; *McMahon v. Railway Co.*, 96 Kan.

271, 272, 150 Pac. 566; *Sheet v. Lusk,* 98 Kan. 614, 159 Pac. 407.) This rule of appellate review disposes of a point which defendant seeks to stress—that in dealing with the claim of Webb's own case, the jury must have set him down as an unqualified perjurer, and that there was no evidence other than Webb's to support the verdict in favor of his son. It does not follow that because part of a litigant's testimony is false, it must be false *in toto.* In disposing of a similar argument, in *State v. Kittle,* 70 Kan. 241, 78 Pac. 407, this court, speaking by Mr. Justice Mason, said: .

"In behalf of the state it is argued that the defendant's own version of the affair was either true or false; that if it was true he was innocent of all offense and should have been acquitted, while if it was false he was guilty to the full extent of the accusation against him. The fallacy of this argument lies in the assumption that the defendant's narrative must be accepted as either wholly false or wholly true, whereas, in fact, it may have been a combination of truth and falsehood." (p. 242.)

This case, however, must stand or fall on the significance attached to the special findings of the jury. Can it be said that they are inconsistent with the general verdict? Do they require that judgment for defendant should be entered thereon?' The jury found that the speed of the car was too great at the point where it was rounding the curve towards the north and where the other car coming unexpectedly from the opposite direction caused defendant to swerve his car and apply the brakes in order to avoid a collision. Defendant's negligence was in driving too fast at that particular point under the circumstances where his vision was so short that he could not see what might be coming from the opposite direction. The suggestion is made that if any motorist should be coming from around the curve, whom defendant could not see because of the sharpness of the curve and because of the weeds and shrubbery immediately north of the roadway, he could rely upon the duty of such motorist to conform to the rules of the road and would be keeping to the right side of the road. In a recent automobile-collision case, *Keir v. Trager,* 134 Kan. 505, 7 P. 2d 49, this court said:

"The law is well established that the operator of an automobile in a public highway may assume others using the highway will observe the law of the road, and he is not guilty of contributory negligence in acting upon such assumption unless and until he has knowledge to the contrary." (p. 507.)

That rule is sound and was well applied in the cited case, but it does not follow that where a motorist's view ahead is shortened to a quarter of a block because of rounding curves on the highway that

he is free to proceed at such a rate of speed that he cannot stop within the range of his vision if some untoward circumstance renders it imperative to do so for the protection of life and limb. A majority of this court holds that the finding, No. 2, that thirty-five miles per hour was too fast for a car rounding that curve under the circumstances, cannot be set aside as a matter of law.

The point is made that Mrs. Webb had an equal opportunity to see and appreciate that there might be danger ahead (finding No. 4), and that she did nothing to warn the driver except to scream (finding No. 5) at a time when it was too late for that alarm to be efficacious. Finding No. 4, however, must be read in connection with the other findings, and particularly with No. 7, which specifically finds that Mrs. Webb had not been over the road shortly before the accident. Residing in Kansas City, she would not be likely to know the lay of the road. She was therefore not held down to the same measure of diligence as the defendant. It would not occur to Mrs. Webb that a speed of thirty-five miles an hour was too fast, since she was not familiar with the locality. She might reasonably assume that defendant as a local resident would know the nature of the roadway ahead.

In *Anthony v. Kiefner*, 96 Kan. 194, 150 Pac. 524, it was said:

"The mere fact that the mother, who was sitting by the side of her son and as his guest, did not protest against his action when he drove his automobile at an excessive rate of speed for the distance of a little more than a city block, at the end of which an injury was inflicted, cannot be held as culpable negligence on her part which would make her liable for his negligence and the resulting injury." (Syl. ¶ 3.)

There is nothing in this record which will permit this court to deny that it was a fair question for the jury to say whether the negligence of the driver was attributable to Mrs. Webb as a guest and passenger under the circumstances. It cannot be said as a matter of law that she was guilty of contributory negligence. (*Kessler v. Davis*, 111 Kan. 515, 207 Pac. 799; *Link v. Miller*, 133 Kan. 469, 300 Pac. 1105.)

Defendant also makes the point that when defendant saw the unexpected automobile approaching around the curve from the northwest he should not be held liable for his error in judgment in applying his brakes as he swerved to avoid the collision. Probably so. Persons suddenly confronted with imminent danger do things which ordinarily might be regarded as negligence but which are excused by the circumstances. (*Ryan v. Atchison, T. & S. F. Rly. Co.*, 131 Kan.

706, 293 Pac. 763, syl. ¶ 3.) Here, however, the negligence and its consequences are properly traceable to the excessive speed, and the fact that defendant was excusable for an error in judgment when suddenly confronted by the emergency he had already made possible by his excessive speed does not exculpate him.

The judgment is affirmed.