No. 32,418

IDA PEARLE HILL, Administratrix, *Appellee,* v. THE SOUTHERN
KANSAS STAGE LINES COMPANY, *Appellant.*

(53 P. 2d 923)

Opinion filed
January 25, 1936.

*J. W. Blood, F. W. Prosser,* both of Wichita, *Braden C. Johnston,* of Marion, and *D. M. Ward,* of Peabody, for the appellant.

*W. H. Carpenter* and *John E. Wheeler,* of Marion, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a widow, as administratrix, for damages on the ground of negligent operation of a bus, resulting in the death of her husband.

Plaintiff recovered, and defendant appealed. One of appellant's contentions is, the trial court erred in overruling its demurrer to appellee's evidence. This contention requires a review of appellee's evidence. The pertinent portions thereof are:

James A. Hill, husband of appellee, was fatally wounded at Admire Junction, by one of appellant's passenger buses. At the time of the accident, deceased was operating a filling station and lunch counter, and fixing tires at Admire Junction. Appellant's stage, when flagged, stopped there to pick up passengers. For some period of time deceased, under arrangements with one of appellant's bus drivers, had flagged the stage for appellant when passengers desired to board it. The bus driver had left a red flag with deceased for this purpose. It was in connection with flagging the stage on the night of September 4, 1933, that deceased was fatally injured. Admire Junction is on highway 22 and 11, north of Emporia. The junction is formed by U. S. highway 50, running east and west, and highway numbered 22 and 11, running north and south. About 500 feet south of highway 50, highway 22 leaves or curves off from highway 22 and 11, and runs northeast into highway 50, and highway 11 continues north from the point where highway 22 curves off from highway 22 and 11, intersecting highway 50; there is also a curve leaving highway 11, north of highway 50, which curves and runs southeast into highway 50. Between the point where highway 22 leaves highway 22 and 11 and joins highway 50, there is a triangular piece of ground, referred to throughout the trial as "the triangle." This triangle was referred to by some of the witnesses as "the safety zone." (The triangle is not designated as a safety zone, and the trial court rightly instructed the witnesses not to refer to it as such.) The triangle is covered with gravel and is not a part of the regularly used highway. The width of the curve is thirty feet between the fences, and the traveled part of the curved road or bituminous mat is twenty-six feet. Highway 22 and 11, coming

from the south, comes down a hill from the south to about the point where highway 22 curves off of highway 22 and 11, to make the junction with highway 50, running east and west. These three roads were covered with a bituminous mat. From the junction of these roads highway 50 continues east. The space covered by the bituminous mat at the junction just east of the triangle is about sixty feet in width. The curve and highway 50 were fairly smooth and level at the time of the accident. The triangle is about thirty feet in width at the west end and runs out to a point at the east end. The triangle is northwest of the curve.

The filling station of deceased was located to the south and east of the curve. The east side of the filling station is approximately due south of the east point of the triangle. A relative position of these roads is shown by the drawing on page 46.

The drawing is not presented as an accurate reproduction, but solely for illustrative purposes and in order to enable the reader to more readily visualize the general situation. The filling station pumps are about twenty-six feet from the edge of the mat.

Deceased in the past had always used the triangle as a signaling point for appellant's buses. On this particular occasion he had done likewise and was standing either in the triangle or on the edge of it while waving the flag. The entire curve and road to the north was lighted by the lights from the filling station. He could be seen on the triangle at night by the driver of a vehicle coming from the south at a point farther than 225 feet south of the triangle. The curve was twenty-six feet wide. The bus was negotiating the curve on the left or northwest side, at fifty miles an hour. It did not stop after striking deceased until it had traveled about three times its length. The daughter of deceased testified:

"Q. After that, Lola, what did your father do? A. He took the flag and walked out to this triangle.

"Q. Now can you point about where he was? A. Well, he came out here across from in here and he stood right at the edge of this safety zone or triangle here (indicating) . . .

"Q. Which side of the road was that bus coming on? A. It was on the left-hand side when I seen it.

"Q. Would that be the south side of the road or the northwest side of that road, of 22? A. Well, it would be the northwest side.

"Q. Just show on there where it would be. A. Well, it would be right along here on this side (indicating).

"Q. What was your father doing at the time that—could you see your father? A. Yes, sir.

"Q. And what was he doing, Lola? A. He was waving the flag up and down.

"Q. Which way was he facing? A. He was facing the southeast.

"Q. Just show the jury how his arm was. A. Just as the bus hit him, he had his arm up.

"Q. Did you see the bus strike him? A. Yes, sir."

The daughter testified concerning where her father was standing before he crossed the highway. She said she "couldn't say just exactly where he was standing, he was just on the outside in the drive there." She further testified that after her father started across the road she stood at the east side of the pump and watched him. She saw the lights flash from the bus but did not see the bus until it was right close to her father, that she didn't take her eyes off of her father at all, and was watching him wave the flag until he was struck. She stated he was waving the flag with his right hand and facing rather to the southeast, and that she did not see him make a move of any kind. The daughter testified he was struck on the right side. The testimony of the attending physician corroborated this fact. He testified deceased was suffering from—

"Fracture of the base of the skull, with free hemorrhage from the right ear. Fracture of fifth and sixth ribs on the right side in the anterior auxiliary region, with crushing injuries to the chest. Fracture of the right femur in the middle third with two inches overriding posterior displacement of the lower fragment. Cuts and bruises on the scalp. That is briefly it.

"Q. From these injuries would you say that this exterior violence which you have described, was for the most part on the right side and face of the body of James Hill? A. It was."

The doctor further testified he removed a piece of gravel about the size of a large pea from the scalp wound above the right ear. The triangle was covered with gravel. On cross-examination of the daughter it was shown that a car coming from the west on highway 50 could travel across the east end of the gravel-covered triangle. The purpose of this cross-examination was calculated to show that a car, if traveling there, might carry some gravel onto the highway and that deceased might have gotten the gravel in his scalp while on the highway and not necessarily while on the triangle. There was evidence, however, no gravel was on the highway on this occasion.

The deceased, after being struck, was found northeast of the center line of highway 50, and about three feet from the bus and about two thirds of the way back along the side of the bus.

Deceased wore overalls and often carried folded bills in his watch pocket. This pocket was not torn before but was torn after the accident. It was a still moonlight night. A folded dollar bill was found on the highway behind the bus. It was found north of the center of highway 50. A tire tester used by deceased was found over the north side of highway 50. The glass in the left front headlight of appellant's bus was broken. It appears this glass was on the south edge of highway 50.

In support of appellant's contention that the trial court erred in overruling its demurrer to appellee's evidence, appellant compares the testimony of its own and appellee's evidence. In ruling on a demurrer to evidence, the court does not pass on conflicting evidence: (*Kerr v. Kerr*, 85 Kan. 460, 116 Pac. 880; *Hyland v. Railway Co.*, 96 Kan. 432, 151 Pac. 1107; *Rosenfeld Co. v. Gleed*, 110 Kan. 75, 202 Pac. 611; *Rowan v. Rosenthal*, 113 Kan. 604, 215 Pac. 1008.)

In the case of *Prewett v. Sholl*, 120 Kan. 158, 242 Pac. 149, this court restated the rule which had been many times previously stated, when it said:

"In passing upon the demurrer the court was required to view the evidence given in the light most favorable to plaintiff and allow all reasonable inferences in her favor." (p. 162.)

See, also, *Rowan v. Rosenthal*, supra; *Lundstrom v. Nelson*, 114 Kan. 324, 219 Pac. 509; *James v. Grigsby*, 114 Kan. 627, 633, 220 Pac. 267; *Holloway v. Gano*, 120 Kan. 256, 243 Pac. 317.

In the case of *State, ex rel., v. Gerhards*, 99 Kan. 462, 162 Pac. 1149, the rule was stated thus:

"Tested by demurrer, the evidence was entitled to full credence and to be considered in its most favorable and propitious light towards the party which adduced it." (p. 464.)

Applying the foregoing rule to appellee's evidence, we are obliged to hold the evidence established negligence on the part of appellant. Deceased had stationed himself on or at the edge of the gravel triangle, a place of safety relative to a vehicle coming from the south and turning east. According to the daughter's testimony, deceased took the flag and walked out to this triangle and stood right at the edge of it waving the flag. He was facing the south and east; she did not see him make a move. He was flagging the bus in accordance with previous arrangements made with appellant's bus driver and in keeping with his past practice. He was visible to the bus driver from a distance of more than 225 feet. For the bus

driver to negotiate the curve at fifty miles an hour on the extreme left or wrong side of the highway, with nothing to prevent the bus from occupying any other part of the entire road, except possibly its own speed, and strike deceased, stationed where he was, clearly presented a case of negligence for the jury. The demurrer to the evidence was properly overruled.

2. Next, did the conduct of deceased constitute contributory negligence as a matter of law? Appellant insists it did.

If appellant is entitled to judgment on the ground of contributory negligence it must be solely as a matter of law, for the jury's verdict acquits deceased of contributory negligence as a matter of fact. It is contended the daughter testified her father went across the road and *that she couldn't say exactly where he was standing, he was just outside on the drive.* That testimony, as previously pointed out, referred to where deceased was standing on the drive at the filling station before he crossed the road. It did not refer to his location when he was struck. The daughter definitely fixed his location after he crossed the highway with the flag, on a point at the edge of the triangle. Appellant's answer admitted deceased had taken a position in the triangle. The answer stated: "Said accident would not have occurred had the said James A. Hill stayed in said triangle of said intersection." The daughter testified she never took her eyes off her father and she did not see him make a move of any kind. It was there, she testified, he was struck. It was, of course, not contended by appellant that for deceased to be struck by a bus while it was on the wrong side of the highway and while deceased was standing on the edge of the triangle, signaling for appellant to stop, constituted contributory negligence. Appellant's answer alleged what it claimed constituted the specific contributory negligence. Appellant charged it consisted in leaving the triangle and disregarding the fact the bus was approaching and running across the road into the path of the bus in such manner that the driver was unable to stop the bus or avoid hitting deceased. The evidence of appellee did not support in the remotest the contributory negligence charged by appellant.

Appellant's evidence quite strongly supported its allegation of contributory negligence. The first question, therefore, was whether the accident occurred as related by appellee or whether the proximate cause were the acts charged as constituting contributory negligence. This question could not be answered as a matter of law.

The case of *Stotts v. Taylor*, 130 Kan. 158, 285 Pac. 571, is in some respects similar. The facts, however, were much more favorable to defendant, as defendant was on the proper side of the street. Defendant in that case also contended the pedestrian was guilty of contributory negligence in that she stepped squarely in front of the vehicle and that a demurrer to her evidence should have been sustained. This court said:

"Upon the evidence, the matter in dispute whether deceased exercised due care in the situation and the existing conditions or was guilty of contributory negligence, was a fair question for the determination of the jury. (*Wyatt v. Tanquary*, 101 Kan. 581, 168 Pac. 858; *Kelly v. Vucklich*, 111 Kan. 199, 206 Pac. 894; *Nicholas v. Wiles*, 126 Kan. 687, 271 Pac. 307; *O'Dowd v. Newnham*, 13 Ga. App. 220; *Towle v. Morse*, 103 Me. 250; *Stephenson v. Parton*, 89 Wash. 653; *Schock v. Cooling*, 175 Mich. 313; *Diamond v. Cowles*, 174 Fed. 571.)" (p. 162.)

In *Sponable v. Thomas*, 139 Kan. 710, 33 P. 2d 721, the rule was stated thus:

"In determining whether as a matter of law a plaintiff is guilty of contributory negligence which precludes his recovery for injuries sustained, all of the testimony favorable to the plaintiff must be accepted as true, and if the facts are such that reasonable minds reach different conclusions thereon, the question must be submitted to the jury and cannot be determined by the court as a matter of law." (Syl. ¶ 4.)

3. Assuming deceased left the edge of the triangle and moved to the right, back to the left and then back to the right as appellant's witnesses say, the verdict still could not be set aside, as a matter of law. The testimony of the driver clearly indicated confusion in the mind of deceased. The driver testified, "When I thought he was confused I put the brakes clear to the floor." That obviously was too late, as deceased was nevertheless struck. Who was responsible for the dilemma and confusion with which deceased was confronted? If the jury believed the bus was moving toward deceased standing on the edge of the triangle at the rate of fifty miles per hour, or 73.33 feet per second, with the lights from the bus upon him, his confusion is easily explained. It was the province of the jury to determine the responsibility for his peril and confusion. Did deceased in his confusion, with a split part of a second in which to determine his course of action, choose wisely, and if not is appellee barred from recovery? In the case of *Crist v. Light Co.*, 72 Kan. 135, 83 Pac. 199, this court said:

"Where, in a personal-injury action, contributory negligence becomes ma-

terial, and its existence depends upon a conclusion of fact as to which of two courses of action the plaintiff in the exercise of ordinary care for his own protection should have pursued, and the evidence is such that different minds might differ as to the proper conclusion, the question is for the jury and not for the court." (Syl. ¶ 1.)

In the case of *Durst v. Wareham*, 132 Kan. 785, 297 Pac. 675, it was held:

"The question of whether a negligent act is the proximate cause of an injury and whether an ordinary, reasonable, prudent man would have foreseen that injury might occur as a result of a negligent act is a question of fact for the jury." (Syl. ¶ 4.)

Can it be reasonably doubted such confusion in the mind of deceased would have existed had the bus been driven on the proper side of the highway? The jury would have been justified under the evidence in believing the confusion in the mind of deceased was occasioned by the location, lights and speed of appellant's bus. In the case of *McCallion v. Railway Co.*, 74 Kan. 785, 88 Pac. 50, this court announced the rule thus:

"It is not contributory negligence, as a matter of law, for one who is placed in a dangerous position by another's negligence to adopt in a sudden emergency a perilous alternative in an endeavor to avoid danger to himself or to others, although it may turn out that he should have acted differently." (Syl. ¶ 2.)

In the case of *Barnhardt v. Glycerin Co.*, 113 Kan. 136, 140, 213 Pac. 663, the negligence of persons suddenly placed in a position of peril and impending danger was considered, and sanction was given to the following rule:

"The rule judicially stated is that one who in a sudden emergency acts according to his best judgment or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence." (20 R. C. L. 29.)

See, also, *Ryan v. Atchison, T. & S. F. Rly. Co.*, 131 Kan. 706, 293 Pac. 763; *Webb v. Lippard*, 134 Kan. 764, 8 P. 2d 381; *Godsey v. Cox*, 135 Kan. 343, 10 P. 2d 871; *Eaton v. Salyer*, 135 Kan. 411, 10 P. 2d 873.

The questions of contributory negligence and proximate cause were properly submitted to the jury.

The jury returned answers to special questions as follows:

"1. Where was the deceased with reference to the center of the main traveled portion of the highway at the time he was struck? A. Left side of the road.

"2. What, if anything, did the deceased do immediately before the accident with reference to avoiding said accident? A. He was waving the flag.

"3. What did the driver do immediately before said accident with reference to avoiding the same? A. Applied brakes, but not in time.

"4. If you find that the defendant was guilty of negligence which resulted in the death of the deceased, state what said negligence consisted of. A. Left side of road and too much speed.

"5. On what part of the highway was defendant's car being driven immediately before the accident? A. On left side of the road.

"6. If you find for the plaintiff, how much do.you allow for medical attention, hospital bills, and funeral expenses? A. For medical and hospital bill, $90."

4. Appellant moved the answers be set aside for the reason they were not sustained by the evidence and were contrary thereto. The motion was overruled, and it is alleged this ruling constitutes reversible error.

No complaint is made to answer number six. Considerable complaint is made to answer number two. It is not contrary to evidence. There was evidence to support it. The answer, it seems to us, reflected the thought of the jury that if the driver of the bus had heeded the signal, no accident would have occurred. Appellant insists the answer was not complete. If so, it had the right to ask the trial court to direct the jury to make it complete. (*Stewart v. Produce Co.*, 88 Kan. 521, 129 Pac. 181; *Grubb v. Sargent*, 117 Kan. 233, 230 Pac. 1043.) No such request appears to have been made. One who fails to make a request is not in a position to complain of the answer. (*Smart v. Mayer*, 103 Kan. 366, 175 Pac. 159; *Grubb v. Sargent*, 117 Kan. 233, 230 Pac. 1043; *Moore v. Connelly*, 119 Kan. 35, 37, 237 Pac. 900; *Bagnall v. Hunt*, 131 Kan. 805, 293 Pac. 733.) Furthermore, the motion to set aside the special answers was not based upon their being incomplete. The complaint was the answers were not sustained by the evidence and were contrary thereto.

It is contended answer number three is incomplete and contrary to the evidence. What was said above concerning the incompleteness of answer number two applies here. The answer is not contrary to the evidence. The bus driver stated he first saw deceased flagging the bus at the edge of the triangle when he was 60 or 75 feet from where the deceased was standing and that he had ample time to stop the bus. According to appellee's evidence the jury had a right to believe deceased never moved from that place. Hence the answer "applied the brakes, but not in time," was supported by evidence. Answer number four was supported by both direct and circum-

stantial evidence of appellee. It is fully narrated in the statement of appellee's evidence and requires no reiteration here. The same is true concerning answer number five.

5. We are asked to reverse the judgment for the reason insurance was discussed in the jury room. This subject was referred to by no one in course of the trial. It is true, such subjects are not proper considerations for a jury. There is, however, no indication in this case that the verdict was affected thereby. There was and is now no contention the verdict is excessive. Furthermore, in this particular case, defendant is a common carrier and is required by law to carry insurance. As bearing on this point see *Sponable v. Thomas,* 139 Kan. 710, 719, 33 P. 2d 721, and citations. Under the decision of this court announced January 25, 1936, *Dunn v. Jones,* post, p. 218, 53 P. 2d 918, plaintiff could have sued the insurance company which insured appellant, a common carrier, against liability, directly without making appellant a party defendant. No misconduct of the jury is indicated which would justify reversal in this case.

6. It is also contended the judgment should be reversed by reason of the trial court's prejudicial attitude toward appellant and its counsel. A careful search of the record fails to convince us such prejudice existed. The contention is based on remarks of the trial court to counsel in the course of the trial. If such remarks were considered prejudicial it was necessary timely objections be made thereto and the complaint be specifically called to the attention of the trial court on motion for new trial. It does not appear this was done. The complaint is therefore not reviewable. (*Cone v. Smyth,* 3 Kan. App. 607, 45 Pac. 247; *American Automobile Ins. Co. v. Clark,* 122 Kan. 445, 252 Pac. 215; *State v. Robinson,* 124 Kan. 245, 259 Pac. 691; *Ghumm v. Josch,* 133 Kan. 16, 298 Pac. 751.)

Appellant's exhaustive brief also contains minor objections to the judgment which have been noted. Treatment of them could not alter the conclusion we are compelled to reach. No objection is made to instructions given. The jury resolved the facts in favor of appellee. The verdict is supported by substantial competent evidence. The judgment must therefore be affirmed. It is so ordered.