No. 33,172

THE SUTTON ELECTRIC SUPPLY COMPANY, *Appellee*, v. THE FOURTH NATIONAL BANK, in Wichita, *Appellant*.

(64 P. 2d 34)

Opinion filed January 23, 1937.

*Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr., Verne M. Laing* and *G. K. Purves, Jr.*, all of Wichita, for the appellant.

*Henry Lampl, Maurice Lampl* and *Rupert Teall*, all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: . The controversy here involved originated in an ordinary garnishment action brought by the plaintiff herein against the Bailey Reynolds Chandelier Company in the city court of Wichita, in which case a garnishment summons was served upon the Fourth National Bank of Wichita and judgment was rendered against the defendant chandelier company and also against the garnishee for about $600. The plaintiff then brought a new and direct action in the city court against the garnishee, the Fourth National Bank. The bank answered, and trial was had resulting in a judgment against the bank, from which it appealed to the district court where a trial was had *de novo*, resulting in favor of the bank,

but upon motion of plaintiff a new trial was granted and from that and other prior rulings of the trial court an appeal was taken by the defendant bank to this court.

Several specifications of error are assigned, but they are presented and argued under two headings: First, overruling defendant's demurrer to plaintiff's evidence and refusing to direct a verdict in favor of defendant, and second, granting the plaintiff a new trial.

The bill of particulars pleaded the judgment rendered in the original case and the order of the court issued thereon and alleged the bank failed, neglected and refused, and still fails, neglects and refuses to pay said sum or any part thereof, and prayed for judgment against the defendant bank for the full amount with interest. The defendant bank answered by general and special denials. Among the latter was the following paragraph:

"This answering defendant alleges that it is not now, nor was it at the time the garnishment summons was served upon it, indebted to the Bailey Reynolds Chandelier Company in any amount whatsoever."

The trial in the district court being *de novo,* we need not be concerned as to what took place in the city court, except as to the fact that in the district court several questions were asked in cross-examination as to the witness having been asked certain questions in the city court and having given certain answers thereto which may tend to show a knowledge at that time of claims made by the respective parties.

There is no question as to the exact time the garnishment summons was served upon the defendant bank. It was served at 2:45 p. m. on July 25, 1934. The serious question is, Was the defendant bank, a garnishee, indebted to the chandelier company, or did it have any property in its possession or under its control belonging to the chandelier company at the time the summons was served upon it?

The plaintiff introduced in evidence the draft drawn by the chandelier company on J. C. Vickers, care of Vickers Petroleum Company, for $598.73, dated July 24, 1934, and payable to the Fourth National Bank of Wichita, Kan., also the check of Helen E. Vickers on the First National Bank of Wichita, Kan., for the same amount, dated July 25, 1934, and payable to the Fourth National Bank, which the evidence of the plaintiff shows was made in payment of the draft and delivered to a messenger of the defendant

bank at 2:42 or 2:43 p. m. on July 25, 1934, which was two or three minutes before the service of the summons on the bank.

The evidence of the plaintiff shows that the draft was delivered to Mr. Wertz, representing the Vickers people, shortly before noon on the 25th of July. Mr. Wertz testified that shortly after 2:30 p. m. that day he had a talk over the telephone with Mr. Stewart, an officer of the Fourth National Bank, who had called him earlier while he was out of his office, and Mr. Stewart told him, "they didn't want to accept the money on the draft; there was some trouble."

This is substantially the plaintiff's case and shows conclusively that the messenger of the defendant bank received the check of the Vickers company, in payment of the draft of the chandelier company, two or three minutes before the garnishee summons was served. This would ordinarily make a complete case for the plaintiff against the defendant garnishee, but two things in this case raise a doubt as to the evidence of the plaintiff being complete and conclusive, with the burden being on the plaintiff to show that the defendant was indebted to the chandelier company or had property in its possession or under its control belonging to it, when the summons was served. One is the positive denial in that part of the answer above quoted which might require proof on the part of the plaintiff not only that the funds reached the defendant, but that they at that time belonged to the chandelier company. No such evidence was offered. The other point is the fact that plaintiff knew from the evidence introduced in the city court that the defendant bank claimed to have sent a check by mail to the chandelier company in payment of the draft some time before the Vickers gave the check to the bank messenger. In cross-examination of Mr. Stewart, an officer of the bank, after he had stated that he had testified in the trial of this case in the city court, he was asked this question:

"I will ask you if you were asked this question and made this answer: 'Mr. Stewart, relative to the time you mailed—that you paid this draft to the plaintiff in this case, or the defendant, the Bailey Reynolds Chandelier Company, relative to that time, what time was it that you received the check from J. A. Vickers' office?' Your answer: 'Between two—around two-fifteen to two-thirty.' "

If the bank had mailed its check to the chandelier company prior to the time it received the check from the Vickers, the latter would simply be reimbursing the bank and the funds would not belong

to the chandelier company, for its draft would already have been paid. No effort on the part of the plaintiff was made to meet this well-known defense of the bank, that the chandelier company had already been paid before the Vickers check was delivered to the bank messenger.

What, then, under the testimony of the plaintiff, did the bank have in its possession or control when the summons was served? Unless it was shown that the Vickers check belonged to the chandelier company the garnishee could not be held liable.

Plaintiff cites 28 C. J. 308 where it is stated that—

"Where service of the garnishment and payment is made on the same day, and the exact time of service is shown but not of payment, the presumption is that the service was prior to the payment."

There is no need of any presumption here, as the evidence fixes the time of payment by the Vickers two or three minutes before the time of service of the summons, and if the text refers to any payment by the defendant to the chandelier company that would be affected by an earlier sentence in the same section, as follows:

"There is ordinarily no presumption of liability upon the part of the garnishee, and it must be made affirmatively to appear." (p. 307.)

Plaintiff also cites *Rusco v. DeGood*, 127 Kan. 708, 275 Pac. 201, which lays down the rule that before a demurrer to the plaintiff's evidence can be sustained the court must be able to say that the plaintiff has failed to make out one or more of the material facts of his case after admitting every fact that has been proved which is favorable to the plaintiff and also those which might fairly and logically be inferred from the evidence favorable to the plaintiff. It cannot in this case be inferred that the money collected from the Vickers belonged to the chandelier company, especially in the face of the answer and the well-known defense that the chandelier company draft had already been paid. It needed some evidence to show the continued and existing indebtedness.

The case of *Rowan v. Rosenthal*, 113 Kan. 604, 215 Pac. 1008, is cited with reference to conflicting evidence and inferences. There is no conflict in the evidence under consideration, and as to inferences it might fairly be inferred that a debt once existing might continue to exist if it were not for the fact of a positive denial in the answer and the known attitude of the defendant as to having advanced or paid it before the receipt of the Vickers check.

Other Kansas cases are cited by appellee as to rulings on de-

murrers to the evidence where there are contradictions and inconsistencies, none of which are in the plaintiff's evidence in this case. It is also urged that circumstantial evidence is proper to strengthen the plaintiff's case, but we are unable to apply any of these general rules to the evidence of the plaintiff, which is plain and positive as far as it goes, but does not go far enough.

Appellee argues that if the claimed payment was made by mail it could have been intercepted and stopped by the defendant after service by summons, and that defendant was not required to remit by mail. Most remittances are made these days by mail, which is the usual and ordinary way. The recalling or stopping payment on a check would not relieve the garnishee from liability to the chandelier company, and the plaintiff in a garnishment action has no greater or superior rights against the garnishee than the chandelier company had.

The following statements from the same chapter on Garnishments in 28 C. J., as above cited by appellee, are particularly pertinent to the plaintiff's evidence in this case:

"As in other civil proceedings, the burden of proof is, as a general rule, to be determined by the issues presented by the pleadings, and such burden usually rests upon plaintiff and not upon the garnishee, since the burden rests upon plaintiff to establish the facts essential to the liability of the garnishee. So the burden is on plaintiff to establish the facts essential to the liability to garnishment of a debt evidenced by negotiable paper. Likewise the burden is on plaintiff to show that an assignment of the indebtedness was not prior to the garnishment, or that an alleged assignment was invalid, or fraudulent.

. . . . . . . . . . . . . . .

"Where the evidence leaves a doubt whether the garnishee is indebted to the principal debtor or has property belonging to him, the garnishee is properly discharged. . . . In order to contradict a garnishee's answers, the facts stated in them must be disproved; they cannot be impeached by evidence merely showing that the garnishee is unworthy of belief. It has been held that the answer or disclosure is to be considered as evidence for plaintiff, and he is not required to put it in evidence. But it has also been held that, where the answer contains a denial of liability, unless it is rebutted by competent proof, it is evidence in favor of the garnishee." (22 C. J. 308, 313.)

It is said in 3 R. C. L. 860 that—

"By depositing a note in the mail, with the intent that it shall be transmitted to the payee in the usual way, the maker parts with his dominion and control over it, and the delivery is in legal contemplation complete. . . ."

The case of *Kerr Furniture Co. v. American Ry. Express Co.*, 145 Okla. 278, 292 Pac. 560, was a garnishment case quite similar to

this in that the express company, after delivering the goods and receiving the money, forwarded it by sending a money order by mail, and the purchaser finding the goods received to be damaged brought an action against the factory and garnisheed the express company. In affirming the ruling of the trial court in sustaining the demurrer of the garnishee to the evidence of the plaintiff, the opinion mentioned the fact that the remittance was requested to be sent by mail in an envelope enclosed, and added—

"Therefore, the deposit of this envelope, with the money order enclosed, in the post office, postage prepaid, constituted a delivery of the same to the United States factories, and defendant could not, therefore, be garnisheed for the debt for which it was given." (p. 280.)

The opinion also distinguishes the case from *Watt-Harley-Holmes Co. v. Day*, 1 Ga. App. 646, 57 S. E. 1033, which is cited by appellee, and in it no request was made to remit by mail and the title to the check was held to remain in the sender until it was received by the creditor. The general rule, however, appears to be that in the absence of a specific request, the use of the mail is implied because it is the usual and ordinary method of sending remittances. On this subject it is said in 13 C. J. 300:

"The request or authorization to communicate the acceptance by mail is implied in two cases, namely: (1) Where the post is used to make the offer, as where a person makes an offer to another by mail and says nothing as to how the answer shall be sent; and (2) where the circumstances are such that it must have been within the contemplation of the parties that according to the ordinary usages of mankind the post might be used as a means of communicating the acceptance. . . ."

See, also, 28 C. J. 148 where it is said:

"Payment of a debt before it is due is good as against subsequent garnishment, although it was made for the purpose of defeating such process."

Our only concern with this question here is because of the argument of the plaintiff to the effect that a remittance by mail would not relieve the garnishee of liability until the check would be received by the chandelier company. With this contention we do not agree. Although the proof showed that the Vickers check was received by the messenger of the garnishee two or three minutes before the service of the summons, the evidence entirely failed to show that the garnishee at that time was indebted to the chandelier company or had property in its possession or under its control belonging to it and therefore failed to establish a liability of the garnishee, and the demurrer to the evidence of plaintiff should have been sustained.

There is no good reason for considering the other specifications of error.

The judgment is reversed and the cause is remanded with directions to sustain the demurrer of the defendant to the evidence of the plaintiff and render judgment for defendant.